OWEN *v.* SUMRALL.

In Banc. Sept. 27, 1948.

(36 So. (2d) 800)

16

Harris Sullivan, E. F. Coleman, and Gillespie & Minniece, for appellant.

Breed O. Mounger and T. W. Davis, Jr., for appellee.

**Roberds, J.**

Appellee Sumrall, by action in the Circuit Court of Lamar County, sought and obtained a judgment against appellant Owen and Albert Davis in the sum of $3,291.87, and interest. That principal sum was the total purchase price of 103 head of cattle sold by Sumrall to Davis in three separate sales made December 11th, 12th and 18th, 1945. From that judgment Owen appeals here. Davis did not appeal; therefore, we deal with the case as made between Sumrall and Owen.

Owen argues nine alleged errors committed, as he contends, in the trial court. We pass only upon those necessarily involved in our disposition of the case.

Owen made a motion to transfer the case for trial as to him to Lauderdale County, of which he was a resident and householder. He contended that Davis, who was a resident of Lamar County, had never been served with process and was not in court, and that, therefore, he, being a resident and householder of Lauderdale County, could not be sued in this personal action in Lamar County. The trial court denied the motion. That ruling is assigned as error. These are the facts bearing upon that question:

The original declaration was filed March 23, 1946. Process issued that day for Davis and personal service was had upon him in Lamar County April 1, 1946.

On October 11, 1946, an amended declaration was filed. This was, as to grounds of liability, the same as the original declaration, but it further set out that on November 24, 1939, Davis had been declared a non compos mentis by the Chancery Court of Lamar County and Mrs. Albert Davis, his wife, was then appointed, and was yet acting, as the guardian of his estate, and Mrs Davis as such guardian, was made a party defendant to the suit. The amended declaration asserted that Davis had regained his sanity and was then a normal person. On the day of the filing of the amended declaration process issued for Albert Davis and Mrs. Davis, his guardian, both being residents of Lamar County. On October 17, 1946, this was served personally on the guardian and a copy thereof served upon Mrs. Davis, at the usual place of abode of Davis in that County, she being the wife and a member of Davis' family, over sixteen years of age and willing to receive such copy, the return showing Davis not then found in Lamar County. March 1, 1947, summons issued to Lamar County for Davis and his guardian and Owen, and the return thereon shows personal service in that County upon Davis March 10, 1947, but does not show service upon his guardian. It is, therefore, seen that ▆▆ summons was served personally upon Davis under the original declaration, to which his guardian was not

then a party; that after the guardian became a party she was served personally and a copy left with her for her ward, and that later another summons issued for both the guardian and the ward and personal service duly had upon the ward. We think that sufficient to bring the guardian and the ward into court. They were not served at the same time with the process but both were duly served at different times. The service did not have to be simultaneous. It might be added, although we do not pass upon the effect of it, that the guardian duly appeared in person and by attorney in this case for herself and her ward and ably contested his liability for this debt.

Owen requested, but was refused, a peremptory instruction. He urges we should reverse the case and render judgment for him here. He says the record discloses no liability against him. This involves a consideration of the grounds of liability alleged in the declaration, the proof and procedure in the lower court. The declaration is in two counts. The first count grounded liability against Owen because, as was asserted, (1) Davis was the agent of Owen in the purchase of the cattle from Sumrall; (2) that Davis and Owen were engaged together in the business of purchasing the cattle; (3) that Owen held out Davis as his agent in such purchases; (4) that Owen accepted the benefits and ratified the acts of Davis in buying the cattle, and (5) a general allegation that in making each purchase Davis was acting as agent of Owen. The second count was in general terms and alleged that the cattle were sold to Owen at his special instance and request and he promised, but failed, to pay Sumrall the fair value thereof.

The Court instructed the jury that the proof failed to establish that Davis was the agent of Owen in the purchase of the cattle. The court was correct as to that. And we now add, without detailing the evidence, that it also fails to establish any other ground of liability against Owen set out in the declaration. This would call for re-

versal and judgment here for Owen except for the circumstances now to be related:

Davis undertook to pay for the cattle by issuing to Sumrall three drafts upon Owen aggregating $3,291.87, the total purchase price thereof. These drafts Owen refused to pay. But it is shown, without dispute, that during the months of November and December, and prior to the dates the cattle in question were purchased, Davis bought many other cattle from Sumrall and paid for them by ·drawing some five or six drafts upon Owen, which drafts were all paid. And the evidence on behalf of Sumrall further shows that, in the latter part of November, Owen personally informed Sumrall, in response to an inquiry made of Owen by Sumrall, that the ". . . old fellow (Davis) got in bad shape and I was helping him out and when his drafts are not good I will let you know." The same assurance was given Sumrall by Miss Page, bookkeeper and part owner of the Owen business, according to evidence on behalf of Sumrall. Sumrall says he sold the cattle and accepted the drafts upon that agreement, without notice that the drafts would not be paid by Owen. No objection was made to the competency of this evidence. Objection was made to showing what Miss Page said but this was based upon her lack of authority to make the statements. Sumrall requested, and was granted, this instruction:

"The Court instructs the jury for the plaintiff that if you believe from the evidence that the defendant, Marvin Owen, and Owen Brothers Union Stock Yard, had full knowledge of all the material facts affecting their rights and liabilities growing out of the agreement sought to be enforced in this suit against them by the plaintiff, and that with such knowledge the defendants received the benefit of the agreement, and that the agreement was made on their behalf, then the Court instructs the jury that the defendants are precluded by the acceptance of such benefits from questioning the pretended agents authority in the transaction."

This instruction apparently had reference to Sumrall's claim that Owen had agreed to pay Davis' drafts until Owen gave notice to the contrary. No other "agreement" on the part of Owen is shown.

Owen requested and was refused this instruction: "The Court instructs the jury for the defendant, Marvin Owen, trading as Owen Bros. Union Stock Yards, that the conversation between plaintiff and Marvin Owen at Meridian in the latter part of November, 1945, if you believe such conversation took place, is insufficient in itself to make Marvin Owen liable for drafts drawn by Albert Davis on Owen Bros. Union Stock Yards and payable to plaintiff."

The only other instruction granted the plaintiff, purporting to submit to the jury any issue to be determined by them, was one telling the jurors that if they believed ". . . from a preponderance of the evidence that the defendants are indebted to the plaintiff for cattle sold and delivered by the plaintiff to the defendants, then it is your sworn duty to return a verdict for the plaintiff and to fix the amount of the indebtedness at such sum as you may find from the evidence to be due." Incidentally, the granting of that instruction was, of course, erroneous. It did not submit to the jury for determination any question of fact, or issues, upon which liability could be based, but submitted only the legal conclusion whether the defendants were liable. It is mentioned here, however, in connection with the first two quoted instructions, to show that, although the declaration did not base liability as to Owen on his assurance he would pay the draft, apparently the case was tried mainly upon that theory.

It is true that Owen denied he gave any such assurance to, or had any such understanding with, Sumrall. But that was a question of fact for the jury. It was submitted to the jury, and, so far as we know, constituted the basis of liability of Owen as found by the jury's verdict.

Since the case may be retried we should pass upon two other questions which seemingly will arise on that trial.

■■ As above stated, objection was made to evidence on behalf of plaintiff that Miss Page said drafts drawn by Davis would be paid until notice to Sumrall to the contrary. The witnesses said she was the bookkeeper and part owner of the Owen stock yards, with which concern the business in question was being conducted. Those facts, if so found by the jury, would render her statements competent.

■■ Appellant contends that no evidence of drafts drawn by Davis upon Owen, payable to Sumrall, and paid by Owen, prior to the date of the drafts involved in this litigation, was competent. We think that evidence was relevant on this trial and will be relevant on another trial, if one is had, grounded upon the existence or non-existence of an agreement of Owen to pay drafts drawn by Davis upon him in favor of Sumrall in payment of the price of cattle purchased by Davis from Sumrall until Owen should notify Sumrall to the contrary.

Reversed and remanded.