AMERICAN SAVINGS AND LOAN ASSOCIATION, A CORPORATION, APPELLANT, *v.* STANTON–CUDAHY LUMBER COMPANY, A PARTNERSHIP, RESPONDENT.

No. 5717

May 28, 1969 — 455 P.2d 39

[Rehearing denied June 30, 1969]

*Goldwater, Taber, Hill & Mortimer* and *Robert E. Rose,* of Reno, for Appellant.

*Cooke & Roberts,* of Reno, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

Stanton-Cudahy brought suit against American Savings and Loan to recover $17,057.05 alleged to be due under the terms

of an informal contract between them. The district court ruled for Stanton-Cudahy, and this appeal by American Savings followed. We affirm.

The informal contract concerns an arrangement for the disbursal of funds by American Savings on a construction project at Carson City built by the Sasha Maloff Corporation. American Savings financed that project. Tahoe Wood Products was one of the subcontractors employed to do the rough framing construction work. The major supplier of lumber to Tahoe Wood was Northwest Plywood of Portland, Oregon, who in turn acquired the lumber from the partnership of Stanton-Cudahy, wholesale lumber brokers. The offices of Stanton-Cudahy were in Portland and the lumber was purchased from mills in Oregon and transported to Tahoe Wood in Carson City by trucks of Northwest Plywood.

Stanton-Cudahy had previously done business with Tahoe Wood and Northwest Plywood and had not been fully paid therefor. Those two companies owed Stanton-Cudahy some $17,000 and, when they contacted Stanton-Cudahy to secure lumber for the Carson City job, they were advised that lumber would be furnished only if an arrangement was made to cure their delinquent account. After several discussions, Stanton-Cudahy agreed to furnish lumber on condition that it be paid one-half of the total amount to be paid the subcontractor Tahoe Wood; that is, one-half of Tahoe Wood's total payment including labor as well as materials. If paid on that basis the delinquency would almost be satisfied since it was expected that Tahoe Wood would receive about $90,000 and the lumber to be used would cost approximately $30,000. Thus, if Stanton-Cudahy was paid one-half of the total sum paid to Tahoe Wood, that is, about $45,000, the back debt owing Stanton-Cudahy would nearly be satisfied.

It is not certain that this understanding between Stanton-Cudahy and the subcontractor Tahoe Wood was made known to American Savings who assumed the responsibility for disbursing funds in payment for labor and material supplied to the job site. American Savings denies such knowledge, and the requests for progress payments submitted by Tahoe Wood do not reveal the understanding between Tahoe Wood and Stanton-Cudahy. On the other hand, a letter written by American Savings to Stanton-Cudahy strongly suggests that American Savings did know of that understanding. The letter was written one day after the understanding between Tahoe Wood and Stanton-Cudahy was reached and stated: "This will confirm the request of Tahoe Wood Products, Inc., that for each

draft presented to us for payment of invoices from Tahoe Wood Products, Inc., approved for payment by Sasha Maloff for work performed on property at Carson City, Nevada, we will issue two checks—one-half of total amount of request for payment will be made to Tahoe Wood Products, Inc.; and one-half to your firm." One-half of the "total amount of request for payment" included labor as well as materials and conformed to the understanding reached between Tahoe Wood and Stanton-Cudahy. The trial court resolved this evidentiary conflict in favor of Stanton-Cudahy and concluded that American Savings knew of the arrangement between Tahoe Wood and Stanton-Cudahy. Indeed, the trial court was compelled to so conclude since American Savings was estopped from denying its letter promise to Stanton-Cudahy. NRS 52.060 provides: "The following presumptions, and no others, are deemed conclusive: . . . 3. Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it." Quijada v. Southern Pipe & Casing Company, 78 Nev. 271, 280, 371 P.2d 661 (1962); Graddon v. Knight, 292 P.2d 632 (Cal. App. 1956).

The first shipment of lumber by Stanton-Cudahy was made five days after receipt of the American Savings letter. Fourteen more shipments were made thereafter. The invoice requests of Tahoe Wood to American Savings were in the total amount of $85,849.08. Of this amount $51,725.15 was for materials and $34,123.93 was for labor. In disbursing the loan funds in payment of these requests, American Savings paid Stanton-Cudahy one-half of the amount of the material requests only, and paid the total labor requests plus the other one-half of the material requests to Tahoe Wood. Accordingly, Stanton-Cudahy received only $25,867.47 (one-half of $51,725.15) instead of $42,924.54 (one-half of $85,849.08).[1] The disbursements by American Savings were in accordance with the requests of Tahoe Wood, but did not comply with the letter which American Savings had mailed to Stanton-Cudahy. The latter did not learn of the shortage in payment until after the job was completed. Tahoe Wood became bankrupt and this action against American Savings ensued.

---

[1]$25,867.47 is not exactly one-half of $51,725.15. There is a $9.79 error. These figures were supplied by counsel without dispute, and we consider the error de minimis.

1. The principal claim of error is that an enforceable contract did not exist between American Savings and Stanton-Cudahy since there was no bargained for consideration given by Stanton-Cudahy in exchange for the promise of American Savings to pay one-half of the total requests for payment submitted by Tahoe Wood. It is true that, according to the traditional concept of consideration, action in reliance upon a promise is sufficient reason for its enforcement only when the action is bargained for by the promisor and given in return by the promisee. Rest. Contracts § 75, comment b. In the case at hand, it is fair to state that American Savings did not bargain for the performance of Stanton-Cudahy. It was immaterial to American Savings who supplied lumber to the subcontractor Tahoe Wood and, in this sense, a formal contract between the present adversaries was not made.

This contention, however, fails to recognize the doctrine of promissory estoppel which provides that in a case where traditional consideration is lacking, reliance which is foreseeable, reasonable, and serious will require enforcement if injustice cannot otherwise be avoided.[2] The letter promise of American Savings to Stanton-Cudahy falls within the scope of this doctrine.

That promise was clear: ". . . we will issue two checks—one-half of the total amount of the request for payment will be made to Tahoe Wood Products, Inc.; and one-half to your firm." Stanton-Cudahy relied upon that promise and continued to do so until the job was completed. That reliance must be deemed both reasonable and foreseeable. A special arrangement for payment to Stanton-Cudahy was made. That supplier demanded security and was not willing to rely upon Tahoe Wood for payment. Past experience with that company had caused Stanton-Cudahy to be wary. The single fact that Stanton-Cudahy insisted upon payment directly from American Savings must have caused the latter to foresee that its

---

[2]Rest. Contracts § 90 (1932) reads:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

For an excellent article upon the subject see: Henderson, Promissory Estoppel and Traditional Contract Doctrine 78 Yale L.J. 343 (1969).

letter promise for payment would be relied upon. It was. An enforceable informal contract resulted. Day v. Mortgage Insurance Corporation, 428 P.2d 524 (Idaho 1967); Graddon v. Knight, 292 P.2d 632 (Cal.App. 1956); Owen v. Sumrall, 36 So.2d 800 (Miss. 1948).

2.   A subordinate contention is that of waiver. American Savings urges that if an informal contract was made, Stanton-Cudahy waived its right to rely upon it since it accepted the payments sent by American Savings without objection. This contention is refuted by the record. Voucher statements showing the breakdown in payment were not sent to Stanton-Cudahy; only checks were sent. Thus, the supplier did not know that the disbursements were not in accordance with the letter promise. Waiver cannot exist in the absence of knowledge.

3.   Finally, it is suggested that Stanton-Cudahy is out of court for failing to file a fictitious name certificate with any county clerk in Nevada. NRS 602.010, 602.070. The district court found that Stanton-Cudahy was not "doing business" in Nevada. Substantial evidence supports that finding. The mentioned statute, therefore, does not apply.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.