FEDERATED AMERICAN INSURANCE COMPANY, Appellant, v. BERNARDO T. GRANILLO, SR., and BERNARDO T. GRANILLO, JR.; OMAHA PROPERTY CASUALTY AND INSURANCE COMPANY, Respondents.

No. 22643

August 5, 1992                                     835 P.2d 803

---

*Thorndal, Backus, Maupin & Armstrong* and *Robert A. Groesbeck,* Las Vegas, for Appellant.

*Fitzgibbons & Anderson,* Las Vegas, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

Respondent Bernardo Granillo, Sr. ("Granillo") was insured by appellant Federated American Insurance Company ("Federated"). Federated offered to insure Granillo at a lower rate if his son, respondent Bernardo Granillo, Jr. ("Bernardo"), was excluded from coverage. Specifically, Granillo was told that his policy would cost $552.00 per annum with Bernardo excluded or $1,170.00 per annum if Bernardo were covered. Although Granillo accepted the lower premium, he nonetheless allowed Bernardo to drive; subsequently, Bernardo caused an accident in which another driver was injured.

The vehicle driven by the injured driver was insured by respondent Omaha Property and Casualty Company ("Omaha"). Consequently, Omaha paid the driver $9,120.00 for her injuries. Omaha later requested reimbursement from Federated for

Bernardo's accident contending that, under NRS 485.3091(1),[1] individual exclusions are valid only for claims exceeding the statutory minimum of $15,000.00. Federated, however, refused to reimburse Omaha.

Federated then filed a complaint for a declaratory judgment, requesting that the district court find that the exclusion in Granillo's policy was valid. Subsequently, both Omaha and Federated filed motions for summary judgment. Following a hearing, the district court determined that NRS 485.3091(1) prohibits individual exclusions for less than the statutory minimum amount and granted Omaha's motion for summary judgment. On appeal, Federated contends that the district court erred when it granted Omaha's motion for summary judgment. We disagree.

NRS 485.3091(1) states that a motor vehicle insurance policy must provide the statutory minimum coverage for both the owner of the policy and any other person who uses the vehicle with the owner's permission. We have previously held that this provision invalidates certain exclusions for claims less than the statutory minimum amount. For instance, in Baker v. Criterion Ins. Co., 107 Nev. 25, 805 P.2d 599 (1991) we noted that, under NRS 485.3091(1), a household exclusion clause is valid only for claims in excess of the $15,000/$30,000 minimum liability insurance required by statute. *See also,* Estate of Neal v. Farmers Ins. Exchange, 93 Nev. 348, 566 P.2d 81 (1977) (concluding that a household exclusion clause for less than the statutory minimum amount is void). We now hold that under NRS 485.3091(1), an insurance company must provide minimum coverage to all persons who drive an insured's car with the insured's permission regardless of whether the permissive driver has been explicitly excluded from coverage.

---

[1]In pertinent part, NRS 485.3091(1) of the Motor Vehicle Responsibility Act (NRS ch. 485) states:

1. An owner's policy of liability insurance must;

. . . .

(b) Insure the person named therein and any other person, as insured, using any such motor vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle . . . as follows:

(1) Because of bodily injury to or death of one person in any accident, $15,000 . . . .

(2) Subject to the limit for one person, because of bodily injury to or death of two or more persons in any one accident, $30,000; and

(3) Because of injury to or destruction of property of others in any one accident.

We base this decision on our previously stated policy of providing persons who are injured in motor vehicle accidents with at least minimum compensation for their injuries. In Hartz v. Mitchell, 107 Nev. 893, 896, 822 P.2d 667, 669 (1991), we acknowledged that "Nevada has a strong public policy interest in assuring that individuals who are injured in motor vehicle accidents have a source of indemnification. Our financial responsibility law reflects Nevada's interest in providing at least minimum levels of financial protection to accident victims." Based on this interest in protecting accident victims, we do not think that an insurance company should be able to circumvent the requirements of Nevada's financial responsibility law by excluding coverage to permissive drivers. These laws were enacted to benefit the public as well as the insured; permitting such individual exclusions would frustrate that purpose.

Thus, we conclude that the district court did not err when it determined that Federated must reimburse Omaha for Bernardo's accident even though Bernardo was specifically excluded from Granillo's policy; we therefore affirm the district court order.

MOWBRAY, C. J., ROSE and YOUNG, JJ., concur.

STEFFEN, J. concurring:

Somewhat reluctantly, I concur in the result reached by the majority.

Contrary to an anecdotal "law" of nature, respondents Granillo, Sr. and Granillo, Jr., have managed to "eat their cake and have it, too." Granillo, Sr. has managed to avoid paying a premium over twice the amount Federated charged as a result of excluding his son from his policy and still have his son covered by the policy. Granillo, Jr. has managed to drive with coverage despite the clear determination between the insurer and his father that he would not be insured. Federated, on the other hand, didn't even see the "cake" (the higher premium), let alone eat it.

I concur in the court's opinion because it conforms with Nevada's public policy, as reflected by NRS Chapter 485, that all drivers be insured, thus providing a source of relief to injured persons against the tortfeasors who cause them injury. Unfortunately, however, the law as extended by today's ruling promotes a number of deleterious, socially negative consequences. First, it provides every responsible person in a household relationship with high risk, high cost drivers with an incentive to simply have them declared to be excluded on the policy, knowing that they

will be covered as a matter of law.[1] Second, since insurance companies could not survive as eleemosynary institutions, it is clear that premium adjustments will have to be made to the detriment of all owners of highway vehicles in order to cover the contingency that excluded, high risk drivers in a household will be allowed to use the covered vehicles. Third, insureds such as Granillo, Sr., with coverage specifically excluding high risk drivers, will enjoy coverage for such drivers as a matter of law, courtesy of the subsidies furnished by vehicle owners who do not have such high risk drivers in their households.

An added concern not at issue in this appeal involves what I believe to be a strongly implied promise on the part of Granillo, Sr. not to permit his excluded son to drive the covered vehicle. Granillo, Sr. had the option to cover his son at over twice the premium he elected to pay in return for excluding his son from coverage. The sole quid pro quo Federated received for not charging the higher premium was the fact that it would not be covering the higher risk posed by Granillo, Jr. as a driver of the insured vehicle. It may be cogently argued that it was implicit in the agreement between Federated and Granillo, Sr. that the latter would not allow his son to drive the insured vehicle, for if the son were allowed to drive, he would enjoy coverage under the policy as a matter of law. Since the son was allowed to drive the vehicle, it appears equally cogent to conclude that there was a breach of an implied promise that should leave Federated with an implied right of indemnity against its insured. If Federated were able to recover against Granillo, Sr., at least the loss occasioned by Granillo, Jr.'s operation of the automobile would fall on the party who authorized the son's use of the car in violation of an implied promise not to do so.[2]

It appears that there are few satisfactory remedies for the problem posed by the instant case. Given the overriding importance of the availability of coverage, the legislature was undoubtedly wise in requiring statutory coverage for all potential drivers in a household, irrespective of risk, thus placing the cost burden on society as a whole. As with many public impositions, there are inevitable inequities. There is an element of unfairness to respon-

---

[1] Today's ruling will likely result in insurance policy adjustments that may emasculate the incentive by eliminating elective exclusions that are ineffective as a matter of law and supplanting them with correspondingly higher premiums.

[2] I am not suggesting that the availability of an action for indemnification against the primary insured will provide any real basis for obviating the inevitable increase in the cost of liability insurance that will result from today's decision, as in most instances the prospect for recovery would probably be remote.

sible insureds who would not allow an excluded driver to use a family vehicle, and the degree of unfairness intensifies with owners of vehicles who do not have high risk drivers in their households. All liability insurance policy owners have to subsidize the cost of providing such coverage. In any event, today's ruling rightfully recognizes the clear policy choice made by our legislature, one of the effects of which is readily predicted as a result of the instant case, as no insurance company can prosper by bargaining for, and basing its rates upon, driver exclusions which the law will not allow.

