ALL AROUND TRANSPORT, INC. and Sanderson Farms, Inc., Plaintiffs–Appellees and Cross–Appellants,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, Defendant–Appellant and Cross–Appellee.

No. 95CA0919.

Colorado Court of Appeals, Div. I.

Dec. 12, 1996.

Crites and Farish, Partnership, Robert S. Crites, Jr., Monte Vista, for Plaintiffs–Appellees and Cross–Appellants.

Gordon H. Rowe, III, Albuquerque, New Mexico; Gordon H. Rowe, Jr., Monte Vista, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge CRISWELL.

In this dispute over a lost truckload of potatoes, defendant, Continental Western Insurance Company (Continental), appeals, and plaintiffs, All Around Transportation, Inc., (broker) and Sanderson Farms, Inc. (shipper), cross-appeal from a judgment in favor of the shipper, but which dismissed the broker's claim. We affirm in part and reverse in part.

The facts here are undisputed. The broker, acting as transportation broker on behalf of the shipper, contracted with a trucking company to ship a load of raw, unprocessed, potatoes, grown and packed in cartons by the shipper, from the shipper's farm in Colorado to a buyer in Florida. The trucking company picked up the potatoes, but they were eventually lost prior to the delivery.

At the time of this loss, the trucking company was covered by a cargo insurance policy issued by Continental, and the trucking company furnished the broker with a certificate evidencing that it was, in fact, so insured.

By this policy, Continental agreed to "cover" the trucking company's "legal liability as a common or contract carrier" for cargo described in a bill of lading or similar document and carried by the trucking company in one or more vehicles described in the policy. The limits for this coverage were $100,000 for a cargo loss in any one vehicle, with an aggregate limit of $300,000 in the event that two or more vehicles were involved in a single loss. However, this coverage was also subject to a $1,000 deductible for each loss.

The policy provided that, in the event of a loss, the trucking company was required to "notify Continental or its agent" promptly, and within 90 days after the loss, the trucking company was required to supply a "proof of loss" to it. Such proof of loss was to contain the circumstances of the loss, the nature of the cargo, the identity of all ownership and security interests in the cargo, and estimates of repair or replacement costs. However, the policy did not contain a specific requirement that the trucking company provide further notice to Continental in the event that litigation was later commenced.

Under the general terms of the policy, Continental reserved the right to defend the trucking company against any claim resulting from the loss of or damage to the property of others. In addition, the policy authorized Continental to "adjust the loss" either with the trucking company or directly with the owner of the cargo.

In addition to these insuring agreements, the policy had an endorsement that was required by regulations promulgated under the Interstate Commerce Act. See 49 C.F.R. § 1043.2(c) and § 1043.7(a)(3)(1995). This endorsement "amended" the policy to the extent that any cargo loss resulted "in connection with [the trucking company's] transportation service under certificate of public convenience and necessity issued to [it] by the Interstate Commerce Commission, or otherwise in transportation in interstate or foreign commerce subject to Part II of the Interstate Commerce Act."

Under this endorsement, Continental agreed to pay directly to any shipper for cargo damage or loss to the extent that the trucking company "may be held legally liable therefor." The limit of Continental's liability under this endorsement was only $5,000 per loss, but without any deductible.

Upon the loss of the potatoes here, the broker's counsel gave written notice to Continental's agent of the loss, described the circumstances of the loss, identified the shipper as the owner of the potatoes, and estimated their value at some $10,000. Continental's agent acknowledged receipt of this writing, but for reasons not apparent from the record, failed to notify Continental of the claim.

Shortly thereafter, both the broker and the shipper instituted suit against the trucking company, and a default judgment was entered in favor of both for $11,287.08, repre-

senting the value of the lost potatoes ($9,048.75), interest, costs, and attorney fees.

Based on the foregoing, the trial court, after a bench trial, determined that, because the endorsement to the policy required Continental to make payment directly to the shipper, that endorsement intended that any shipper sustaining a cargo loss and recovering a judgment against the trucking company could maintain a direct action against Continental as a third-party beneficiary under the endorsement. It also determined that the transportation of potatoes in cartons was transportation either under the trucking company's certificate or pursuant to Part II of the Interstate Commerce Act.

Hence, judgment for $5,000, the limit under the endorsement, was entered in favor of the shipper. However, the court dismissed the broker's claim because it concluded that it had no standing to maintain any direct action against Continental.

## I.

The broker argues that the court erred in dismissing its claim against Continental because, by having a certificate of insurance issued to it, it became a third-party beneficiary of the insurance policy. We disagree.

■ First, an insurer, by certifying to a third party that insurance is in effect covering the insured, does not make that third party an intended direct third-party beneficiary of the pertinent insurance policy. *Postlewait Construction, Inc. v. Great American Insurance Cos.*, 41 Wash.App. 763, 706 P.2d 636 (1985), *aff'd*, 106 Wash.2d 96, 720 P.2d 805 (1986).

Further, the policy and endorsement here covered only the physical damage or loss of cargo; it did not insure against other type of consequential losses. Hence, in any event, because the broker had no ownership interest in the lost cargo, it had no claim under the policy or endorsement.

The trial court properly dismissed the broker's claim.

## II.

Continental asserts that the trial court improperly entered judgment against it under the endorsement because (1) the shipper cannot maintain a direct action against it under the endorsement, and (2) the loss did not arise out of transportation covered by the trucking company's certificate or under Part II of the Interstate Commerce Act. We agree that the judgment based on the endorsement cannot be sustained.

■ As noted, the endorsement was required by government regulations. *See* 49 C.F.R. § 1043.2(c) and § 1043.7(a)(3) (1995). While the form of the endorsement prescribed by these regulations requires Continental to make payment directly to a shipper suffering a cargo loss covered under it, neither the endorsement nor the regulation prescribing its form expressly authorizes a direct action by such a shipper against Continental. As a general rule, therefore, such an action cannot be maintained. *See generally,* 12A G. Couch, *Cyclopedia of Insurance Law* § 45.784 (R. Anderson 2d ed.1981).

Nevertheless, because the endorsement requires Continental to pay a shipper directly, we shall assume, without deciding, that it authorizes a direct action by a shipper. *See Ward Trucking Corp. v. Philadelphia National Insurance Co.*, 4 N.J.Super. 434, 67 A.2d 480 (1949). However, the undisputed facts here demonstrate that the endorsement does not cover the shipper's loss.

■ As noted, the endorsement covers a cargo loss only if the loss occurs in connection with transportation under the trucking company's certificate or under Part II of the Interstate Commerce Act. But, a certificate is not needed for, and that act does not apply to, transportation by motor vehicle of:

agricultural products or horticultural commodities (other than manufactured products thereof). . . .

49 U.S.C. § 13506(a)(6)(B) (1995).

Hence, any cargo loss resulting from transportation of such "exempt" products is not a loss covered by the endorsement, because such transportation is not pursuant to the Interstate Commerce Act. *Branson v.*

*MGA Insurance Co.,* 673 So.2d 89 (Fla.App. 1996) (transportation of potatoes involves transportation of exempt commodities, and required endorsement does not cover loss of such cargo). *But see Royal Indemnity Co. v. Jacobsen,* 863 F.Supp. 1537 (D.Utah 1994).

■ The trial court ruled, however, that, because the raw, unprocessed, potatoes here had been placed into cartons for shipment, they had become "manufactured products." Such determination was error.

■ Under the exemption statute, an agricultural product does not become manufactured merely because of incidental or preliminary processing, such as the removal of feathers and entrails from, and the freezing of, fowl. So long as the product retains a continuing substantial identity throughout the processing, it is not a manufactured product for purposes of this statute. *East Texas Motor Freight Lines, Inc. v. Frozen Food Express,* 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917 (1956).

Here, the potatoes underwent no processing; they retained their identity as raw potatoes, but were merely placed into cartons to facilitate handling. Such placement did not, as a matter of law, cause the potatoes to become a "manufactured product."

Hence, because the potatoes were not being transported pursuant to the trucking company's certificate and such transportation was not governed by Part II of the Interstate Commerce Act, the endorsement to the trucking company's policy did not cover the loss. The trial court's judgment, based on this endorsement, must be reversed.

### III.

The shipper's cross-appeal is based upon its assertion that the trial court erred in not entering judgment in its favor for approximately $8,000, under the provisions of the policy itself, which would represent the value of the cargo lost, less the $1,000 deductible requirement of the policy. We perceive no error.

We first note that, unlike the endorsement, the policy itself does not require that the loss be in connection with transportation under a certificate or pursuant to the Interstate Commerce Act. If the trucking company was legally liable for the loss as a common or contract carrier, Continental's policy provided coverage.

■ However, we conclude that, because the shipper cannot be said to be a third-party beneficiary under the policy, it cannot maintain a direct action against Continental.

In discussing Continental's liability under the endorsement, we assumed, without deciding, that, because the endorsement provided that Continental should make direct payment to any shipper who had suffered a loss covered by that endorsement and thereby satisfy the obligations owed by it to its insured, such a shipper could be considered to be a direct third-party beneficiary under the endorsement. The policy itself, however, contains no similar provision.

An injured claimant normally cannot maintain a direct action on the liability policy protecting the tort-feasor. *See* 12A G. Couch, *Cyclopedia of Insurance Law, supra; State Farm Fire & Casualty Co. v. Nikitow,* 924 P.2d 1084 (Colo.App.1995) (patient is not third-party beneficiary of physician's malpractice or business liability policies); *Quigley v. Jobe,* 851 P.2d 236 (Colo.App.1992). *See also Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co.,* 874 P.2d 1049 (Colo.1994) (health care provider not third-party beneficiary of patient's "no-fault" policy); *United Services Automobile Ass'n v. Mione,* 34 Colo.App. 448, 528 P.2d 420 (1974) (member of named insured's household not third-party beneficiary of automobile liability policy). Indeed, such an injured party has no standing even to prosecute a declaratory judgment against a liability insurer. *Farmers Insurance Exchange v. District Court,* 862 P.2d 944 (Colo.1993).

This is so because the parties to such an insurance contract do not intend to benefit the general public; their intent is to benefit the named insured by protecting him or her against future liability. *State Farm Fire & Casualty Co. v. Nikitow, supra.*

Of course, the General Assembly may, by statute, authorize a third party to institute a direct action against a liability carrier. *See*

*U.S. v. Criterion Insurance Co.,* 198 Colo. 132, 596 P.2d 1203 (1979) (provider of medical services is third-party beneficiary of liability policy issued pursuant to Automobile Accident Reparation Act); *Savio v. Travelers Insurance Co.,* 678 P.2d 549 (Colo.App.1983) (*rev'd* in part on other grounds) (because Workers' Compensation Act gives employee right of direct action against workers' compensation carrier, employee is third-party beneficiary of policy). *Cf. Safeco Insurance Co. v. Gonacha,* 142 Colo. 170, 350 P.2d 189 (1960) (personal injury claimant with judgment against insured not entitled to rely on Colorado Financial Responsibility Law if policy not issued under that statute). There is no assertion here, however, that there is any statute that authorizes a direct action by the shipper.

We also conclude that the fact that the shipper here had obtained a judgment against the insured does not require the application of a different rule.

It is true that certain of the language in the *Farmers Insurance Exchange* opinion suggests that a sufficient interest for a direct action might vest in the injured party once that party obtains a judgment against the insured. *See Farmers Insurance Exchange v. District Court, supra,* 862 P.2d at 949 ("[A] plaintiff … who lacks a judgment against the [tortfeasor] and who has no legal rights against the insurance company" lacks standing. "Until [an injured party's] claim is reduced to judgment, she has no legally protected rights or cognizable interest vis-a-vis the insurance companies.").

■ Here, the shipper had obtained a judgment against the trucking company. However, once such a judgment is obtained, the judgment creditor may seek to apply the proceeds of the liability insurance policy to the satisfaction of that judgment by means of a writ of garnishment served upon the insurer. *See Connecticut General Life Insurance Co. v. A.A.A. Waterproofing, Inc.,* 911 P.2d 684 (Colo.App.1995) (*cert. granted* on other issue, March 4, 1996); *Kennedy v. Aerr Co.,* 833 P.2d 807 (Colo.App.1991).

■ This, however, is far different from a direct action upon the policy itself. In pursuing a writ of garnishment, the judgment creditor can assert only the rights of the insured; if the insured has breached a covenant or condition of the policy, the judgment creditor cannot recover. In contrast, a third-party beneficiary asserts independent rights and may not be bound by an insured's breaches. *See* 12A G. Couch, *Cyclopedia of Insurance Law, supra,* § 45.790 at 445–447.

■ We presume, therefore, that the language used by the court in the *Farmers Insurance Exchange* opinion was a simple recognition that, once the injured party becomes a judgment creditor, that party has standing to prosecute garnishment proceedings against the insurer and to litigate any policy issues that may arise during the course of those proceedings. We do not construe that language as conferring standing upon an injured claimant with a judgment to commence a direct contract action as a third-party beneficiary on the liability policy itself, absent an explicit policy or statutory provision allowing such an action. *See Safeco Insurance Co. v. Gonacha, supra.*

Given this consideration, then, we reject the shipper's claim that it was entitled to a judgment on the policy in these proceedings.

The portion of the judgment dismissing the broker's claim is affirmed; the judgment in favor of plaintiff is reversed.

METZGER and ERICKSON*, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.).