131 Nev., Advance Opinion 54

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SAUNDRA TORRES,<br>Appellant,<br>vs.<br>NEVADA DIRECT INSURANCE<br>COMPANY,<br>Respondent. | No. 61103 |
| SAUNDRA TORRES,<br>Appellant,<br>vs.<br>NEVADA DIRECT INSURANCE<br>COMPANY,<br>Respondent. | No. 61640<br><br>**FILED**<br><br>JUL 3 0 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Consolidated appeals from a district court judgment in an action by an injured party against an insurance company and a post-judgment order awarding costs. Eighth Judicial District Court, Clark County; Joanna Kishner, Judge.

*Affirmed in part, reversed in part, and remanded.*

Ganz & Hauf and Adam Ganz and Marjorie L. Hauf, Las Vegas, for Appellant.

Murchison & Cumming, LLC, and Michael J. Nunez, Douglas J. Duesman, and Dustun H. Holmes, Las Vegas, for Respondent.

SUPREME COURT<br>OF<br>NEVADA

(O) 1947A

2/8/16: Corrected per letter to publishers. CT

15-22984

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, C.J.:

Appellant sustained injuries in a car accident. After obtaining a default judgment against both the driver and the owner of the other vehicle, appellant sued the owner's insurer to recover upon the judgment under the insurance policy. In this appeal from the district court's take-nothing judgment, we consider whether an injured party like appellant may assert NRS 485.3091,[1] Nevada's absolute-liability statute, in order to sue the tortfeasor's insurer after obtaining a judgment against the tortfeasor, and whether an injured party can pursue a bad faith claim against the insurer. We also consider whether the insurer's actions established a valid promissory estoppel claim.

We conclude that an insurer cannot circumvent the state's absolute-liability statute. Accordingly, a statutory third-party claimant can sue the insurer to enforce compliance with NRS 485.3091, and we thus conclude that the district court erred in denying appellant relief under NRS 485.3091. However, we conclude nothing in the statute grants a third-party claimant an independent cause of action for bad faith against an insurer. We further conclude that the district court did not err in

---

[1]In relevant part, the statute provides that every motor vehicle insurance policy must contain a provision requiring that "[t]he liability of the insurance carrier with respect to the insurance required by this chapter becomes absolute whenever injury or damage covered by the policy occurs." NRS 485.3091(5)(a).

 

denying relief on appellant's promissory estoppel claim. Thus, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

In April 2006, Jario Perez-Castellano was driving a vehicle owned by Adiel Mollinedo-Cruz and insured by Nevada Direct Insurance Company (NDIC) when he crashed into appellant Saundra Torres's car, injuring Saundra. Neither Mollinedo-Cruz nor Perez-Castellano contacted NDIC. Torres filed a complaint against Mollinedo-Cruz and Perez-Castellano for negligence, negligent entrustment, and punitive damages stemming from the car accident. Mollinedo-Cruz and Perez-Castellano answered the complaint, denying all of the allegations and raising several affirmative defenses. Mollinedo-Cruz and Perez-Castellano then stopped participating in the action.

NDIC subsequently filed a complaint for declaratory relief against Mollinedo-Cruz, Perez-Castellano, and Torres. NDIC argued that because Mollinedo-Cruz violated the policy in failing to cooperate with the post-accident investigation, NDIC was not responsible for his defense or indemnification in Torres's suit against Mollinedo-Cruz. NDIC made an offer of judgment for $1 more than Mollinedo-Cruz's policy limit to Torres, but she declined the offer. The district court entered default judgments against Mollinedo-Cruz and Perez-Castellano in the declaratory relief case and concluded that NDIC was not obligated to defend or indemnify either of them for the accident with Torres. But the district court concluded that the default judgments "[did] not apply to and are not binding" on Torres and she could "pursue any and all claims/defenses available to her under" Mollinedo-Cruz's insurance policy. Torres subsequently acquired a default

judgment against Mollinedo-Cruz and Perez-Castellano in her original liability action.

Torres then filed a new complaint against NDIC. Torres claimed that NDIC breached the insurance policy when it failed to pay her claim, she was entitled to damages based on a theory of promissory estoppel, and NDIC breached the implied covenant of good faith and fair dealing. NDIC filed a motion to dismiss Torres's promissory estoppel and breach of the implied covenant of good faith and fair dealing claims for failure to state a claim. The district court denied NDIC's motion on Torres's promissory estoppel claim but granted the motion on Torres's claim that NDIC breached the implied covenant of good faith and fair dealing.

At the conclusion of a two-day bench trial, the district court entered judgment in favor of NDIC. The district court concluded that Torres was neither a named contracting party nor an intended third-party beneficiary of the insurance contract. The court further concluded that Torres was not a judgment creditor of NDIC because NDIC obtained its default judgment—"that it had no duty to defend or indemnify" anyone for the accident with Torres—before Torres obtained her default judgment against Mollinedo-Cruz and Perez-Castellano.[2] The court also concluded that NDIC fulfilled any obligations under the insurance contract because

_____

[2]Neither Torres nor NDIC argue in their opening or responding briefs that Torres was a judgment creditor of NDIC. However, Torres included such an argument in her reply brief. NRAP 28(c) limits a reply brief to "answering any new matter set forth in the opposing brief." Therefore, we decline to address this issue on appeal.

NDIC made an offer of judgment for the policy limit to Torres, which she rejected.

In regard to Torres's promissory estoppel argument, the district court determined that letters sent from NDIC to Torres indicating that it was reviewing her medical records and it would "review the demand and contact [Torres's counsel] with an offer" did not amount to a promise to pay any amount, and that none of the correspondence between NDIC and Torres precluded Torres from taking action. Torres now appeals.

## DISCUSSION

In resolving this appeal, we must first determine whether Torres has a statutory claim against NDIC under the so-called absolute-liability statute, NRS 485.3091. We then consider whether sufficient evidence supports the district court's promissory estoppel conclusions and whether the district court erred in dismissing Torres's breach of the implied covenant of good faith and fair dealing claim.

*The district court erred in declining to apply NRS 485.3091*

Torres argues that the district court erred when it failed to apply NRS 485.3091 to her action. Torres also argues that the district court erred when it considered the statutory offer of judgment made in the separate declaratory relief action and concluded it satisfied NDIC's obligations under NRS 485.3091. We agree.

On appeal, this court gives deference to the district court's factual findings but reviews its conclusions of law, including statutory interpretation issues, de novo. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009); *Kay v. Nunez*, 122 Nev. 1100, 1104, 146 P.3d 801, 804 (2006). When a statute's language is unambiguous, this court does

not resort to the rules of construction and will give that language its plain meaning. *Clark Cnty. v. S. Nev. Health Dist.*, 128 Nev., Adv. Op. 58, 289 P.3d 212, 215 (2012). But, "[i]f the statute is ambiguous, meaning that it is capable of two or more reasonable interpretations, this court . . . 'look[s] to the provision's legislative history and' . . . 'the context and the spirit of the law or the causes which induced the [L]egislature to enact it.'" *Id.* (citations omitted) (quoting *We the People Nev. v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008)); *Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007).

In Nevada, all motor vehicles must be insured for at least $15,000 bodily injury or death liability per incident, and $10,000 in property damage liability. NRS 485.185; NRS 485.3091(1)(b)(1), (1)(b)(3). NRS 485.3091 also contains an absolute-liability provision that states that

> [e]very motor vehicle liability policy is subject to the following provisions which need not be contained therein:
>
> (a) The liability of the insurance carrier with respect to the insurance required by this chapter becomes absolute whenever injury or damage covered by the policy occurs. The policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage. No statement made by the insured or on behalf of the insured and no violation of the policy defeats or voids the policy.

NRS 485.3091(5)(a). Accordingly, Torres argues that NDIC was required to pay her at least $15,000, the statutory minimum, for required liability insurance.

The language of NRS 485.3091 is unambiguous and specifically states that the terms of NDIC's insurance policy include that

SUPREME COURT
OF
NEVADA

(O) 1947A

liability "becomes absolute whenever injury or damage covered by the policy occurs." NRS 485.3091(5)(a). NRS 485.3091(5)(a) also clearly states that "no violation of the policy defeats or voids the policy." *See Midland Risk Mgmt. Co. v. Watford*, 876 P.2d 1203, 1206-07 (Ariz. Ct. App. 1994) (finding the language of the Arizona statute, worded the same as that of Nevada, was "straightforward").

Despite the absolute-liability provision, NDIC argues that its indemnity obligation was previously determined in a prior declaratory relief action to which Torres was a party. There, the district court found that Mollinedo-Cruz and Perez-Castellano did not comply with NDIC's post-accident policy, and thus, NDIC did not have to defend or indemnify "any and all claims arising out of the April 2, 2006, automobile accident involving Saundra Torres." In the instant case, the district court relied on this previous finding and determined that Torres was not a judgment creditor of NDIC based on this declaratory relief order.

However, the next paragraph of that declaratory relief order resolves this action in favor of Torres: "The Default Judgments taken against Defendants Mollinedo and Castellano do not apply to and are not binding upon Saundra Torres, who is still allowed to pursue any and all claims/defenses available to her under the terms and conditions of the subject insurance policy." And thus, the district court erred when it did not consider the entire declaratory judgment order.

More importantly, we hold that no post-injury violation of a policy will release the insurer under the absolute-liability provision. This view is consistent with the many states that have adopted similar "frozen

liability" statutes.[3] At common law, the insurer was permitted to rescind an insurance policy for material misrepresentations made in acquisition of the policy or for breach of the insurance contract. *See Prudential v. Estate of Rojo-Pacheco*, 962 P.2d 213, 217 (Ariz. Ct. App. 1997); *Costley v. State Farm Fire & Cas. Co.*, 894 S.W.2d 380, 385-86 (Tex. App. 1994). Derogating from the common law, absolute-liability statutes are interpreted to require payment of the minimum statutorily required insurance benefits, if the law required the policy to be in place, even if the insured has breached the insurance contract or made misrepresentations in the insurance application. *See Midland Risk Mgmt.*, 876 P.2d at 1206-07 (requiring insurer to indemnify the insured despite misrepresentations on the insurance application because of the state's absolute-liability statute); *Harris v. Prudential Prop. & Cas. Ins. Co.*, 632 A.2d 1380, 1381-82 (Del. 1993) (holding that noncooperation of insured cannot defeat

---

[3]*See, e.g.*, Ala. Code § 32-7-22(f)(1) (LexisNexis 2010 & Supp. 2014); Alaska Stat. § 28.20.440(f)(1) (2014); Ariz. Rev. Stat. Ann. § 28-4009(C)(5)(a) (2013); Ark. Code Ann. § 27-19-713(f)(1) (2014); Colo. Rev. Stat. § 42-7-414(2)(a) (2014); Del. Code Ann. tit. 21, § 2902 (f)(1) (2005); Haw. Rev. Stat. § 287-29(1) (2007); 625 Ill. Comp. Stat. Ann. 5/7-317(f)(1) (West 2008); Iowa Code Ann. § 321A.21(6)(a) (West 2005); La. Rev. Stat. Ann. § 32:900(F)(1) (2013); Mich. Comp. Laws Ann. § 257.520(f)(1) (West 2006); Mo. Ann. Stat. § 303.190(6)(1) (West 2010); Mont. Code Ann. § 61-6-103(5)(a) (2013); Neb. Rev. Stat. § 60-538(1) (2010); N.C. Gen. Stat. § 20-279.21(f)(1) (2013); N.D. Cent. Code § 39-16.1-11(6)(a) (2008); Ohio Rev. Code Ann. § 4509.53(A) (LexisNexis 2014); Okla. Stat. Ann. tit. 47, § 7-324(f)(1) (West 2007); Or. Rev. Stat. § 742.456 (2013); R.I. Gen. Laws § 31-32-24(f)(1) (2010); S.C. Code Ann. § 56-9-20(5)(b)(1) (2006); S.D. Codified Laws § 32-35-74(1) (2004); Tenn. Code Ann. § 55-12-122(e)(1) (2012); Va. Code Ann. § 46.2-479(1) (2014); Wash. Rev. Code Ann. § 46.29.490(6)(a) (West 2012); W. Va. Code Ann. § 17D-4-12(f)(1) (LexisNexis 2013); Wyo. Stat. Ann. § 31-9-405(f)(1) (2013).

application of absolute-liability statute where innocent third party is injured); *Dave Ostrem Imps., Inc. v. Globe Am. Cas./GRE Ins. Grp.*, 586 N.W.2d 366, 367-68 (Iowa 1998) (stating that condition precedent to coverage cannot defeat application of absolute-liability statute); *Cowan v. Allstate Ins. Co.*, 594 S.E.2d 275, 276-77 (S.C. 2004) (recognizing the appellate court's holding in *Shores v. Weaver*, 433 S.E.2d 913, 917 (S.C. Ct. App. 1993), *superseded by statute on other grounds as stated in McGee v. S.C. Dep't of Motor Vehicles*, 698 S.E.2d 841 (S.C. Ct. App. 2010), that breach of a policy's notice requirements by the insured did not release the insurer from liability).

Here, Mollinedo-Cruz's and Perez-Castellano's noncompliance with the notice and cooperation clauses of the policy does not void NDIC's indemnity obligations. Thus, NDIC cannot avoid NRS 485.3091's absolute-liability requirements.

This holding is also consistent with the public policy underlying this financial responsibility law. *See Federated Am. Ins. Co. v. Granillo*, 108 Nev. 560, 563, 835 P.2d 803, 804 (1992) (stating that NRS 485.3091 is based on an "interest in protecting accident victims . . . [t]hese laws were enacted to benefit the public as well as the insured"); *Hartz v. Mitchell*, 107 Nev. 893, 896, 822 P.2d 667, 669 (1991) ("Nevada has a strong public policy interest in assuring that individuals who are injured in motor vehicle accidents have a source of indemnification. Our financial responsibility law reflects Nevada's interest in providing at least minimum levels of financial protection to accident victims."). To provide such a policy and allow no mechanism for an injured party to recover under the statute would be inconsistent with the statute's purpose. *See Gallagher v. City of Las Vegas*, 114 Nev. 595, 599-600, 959 P.2d 519, 521

Supreme Court
OF
Nevada

(O) 1947A

9

(1998) ("Our interpretation should be in line with what reason and public policy would indicate the [L]egislature intended, and should avoid absurd results.").

Accordingly, we conclude that the district court erred in denying Torres relief under NRS 485.3091.[4]

*The district court erred when it found that NDIC's statutory offer of judgment in the declaratory relief case discharged NDIC from abiding by NRS 485.3091*

Torres also argues that the district court erred when it considered the statutory offer of judgment made in the declaratory relief action. NDIC essentially concedes the district court erred, but such error was harmless. We agree with Torres.

Evidence regarding settlement offers is not admissible at trial "to prove liability for or invalidity of the claim or its amount." NRS 48.105(1). One of NRS 48.105(1)'s "undisputed purposes . . . [is] to prevent evidence of settlement offers from 'haunt[ing] a future legal proceeding.'" *Davis v. Beling*, 128 Nev., Adv. Op. 28, 278 P.3d 501, 510 (2012) (second

---

[4]Torres argues that she relied on NRS 485.3091(5)(a) for her breach of contract claim, and that under this statute, she was an intended third-party beneficiary to the insurance contract. We reject this argument and agree with the majority of courts that have determined that an injured party is not a third-party beneficiary. *Herrig v. Herrig*, 844 P.2d 487, 492 (Wyo. 1992) ("The third-party-beneficiary argument has been rejected by virtually every court to address the issue, and we join those courts today."); *see, e.g., Page v. Allstate Ins. Co.*, 614 P.2d 339, 339-40 (Ariz. Ct. App. 1980); *All Around Transp., Inc. v. Cont'l W. Ins. Co.*, 931 P.2d 552, 557 (Colo. App. 1996) (determining that an injured claimant does not have standing "to commence a direct contract action as a third-party beneficiary on the liability policy itself, absent an explicit policy or statutory provision allowing such an action").

alteration in original) (quoting *Morrison v. Beach City LLC*, 116 Nev. 34, 39, 991 P.2d 982, 985 (2000)).

Here, the district court permitted the evidence to be admitted to show "that an offer was made on the particular dates in question, and the amount of the offer, and for no other purpose." Thus, by the district court's reasoning alone, it should not have considered the offer for the purpose of satisfying NDIC's obligations under NRS 485.3091.[5] *See also Allstate Ins. Co. v. Miller*, 125 Nev. 300, 311, 212 P.3d 318, 326 (2009) ("[T]he mere offering of the policy limit does not necessarily end a primary liability insurer's contractual obligations.").

*Substantial evidence supports the district court's determination on Torres's promissory estoppel claim*

Torres next argues that the district court abused its discretion in not awarding her damages based upon a promissory estoppel theory, because she relied on NDIC's representations that an offer would be forthcoming and the court did not address all of the doctrine's elements. Torres further argues that the district court abused its discretion when it determined that Torres's claims were too speculative. We disagree.

---

[5]Moreover, we note that NDIC's offer did not occur in the instant underlying case, but in a separate declaratory relief action brought by NDIC. There, Torres sought to amend her answer to include counterclaims for relief for the same causes of action she pleaded in the instant underlying case. Crucially, acceptance of the offer of judgment would have prevented Torres from pursuing any other claims against NDIC. Ultimately, the district court denied her motion to amend and stated that Torres was "still allowed to pursue any and all claims/defenses available to her under the terms and conditions of the subject insurance policy." And Torres subsequently pursued those claims in the instant underlying case.

Even if there is conflicting evidence, this court will not overturn a district court judgment if it is supported by substantial evidence. *Jackson v. Nash*, 109 Nev. 1202, 1213, 866 P.2d 262, 270 (1993). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Winchell v. Schiff*, 124 Nev. 938, 944, 193 P.3d 946, 950 (2008) (internal quotations omitted). "If the evidence, though conflicting, can be read to support [a conclusion], this court must approve the trial court's determinations." *Shell Oil Co. v. Ed Hoppe Realty Inc.*, 91 Nev. 576, 578, 540 P.2d 107, 108 (1975).

In *Pink v. Busch*, this court stated:

> To establish promissory estoppel four elements must exist: "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped."

100 Nev. 684, 689, 691 P.2d 456, 459-60 (1984) (quoting *Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982)). We conclude that the two requirements upon which the district court based its determination—the existence of a promise or conduct the party to be estopped intended to be acted upon and detrimental reliance—evince substantial evidence to support the district court's conclusion that there was no promissory estoppel.

First, the district court determined that NDIC's conduct did not amount to a promise or conduct upon which it intended Torres to rely. Normally, a cause of action will not be supported by a mere promise of

future conduct. 31 C.J.S. *Estoppel and Waiver* § 116 (2008). "The promise giving rise to a cause of action for promissory estoppel must be clear and definite, unambiguous as to essential terms, and the promise must be made in a contractual sense." *Id.* (footnotes omitted). In *American Savings & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, we determined that a letter sent from American Savings and Loan to Stanton-Cudahy clearly constituted a promise for payment. 85 Nev. 350, 354, 455 P.2d 39, 41-42 (1969). The letter read, "[W]e will issue two checks—one-half of total amount of request for payment will be made to Tahoe Wood Products, Inc.; and one-half to your firm." *Id.* at 353, 455 P.2d at 40. Stanton-Cudahy reasonably and foreseeably relied upon that promise when it continued to perform work. *Id.* at 354, 455 P.2d at 42.

Here, the district court determined that the communications between NDIC and Torres's attorney at the time did not amount to a promise to pay any amount. The court found that NDIC sent Torres three letters before Torres filed her personal injury lawsuit. In a letter dated September 28, 2006, NDIC stated that it would "review the demand and contact [Torres's attorney's] office with an offer." Another letter dated October 30, 2006, informed Torres's attorney that "[t]he medical bills ha[d] been sent for medical review," and that "a copy of the Summary and Analysis report will be sent to [his] office soon." The court also found that Torres's attorney testified that he knew his demand letter had expired without NDIC making an offer.

We conclude that sufficient evidence supports the district court's conclusion that the letters were insufficient to induce reliance or establish a promise. Unlike the letter in *American Savings*, the letters here did not constitute a clear promise to pay, nor did they specify an

amount to be paid. Moreover, Torres could not have reasonably relied on the September 28 letter because, even if an offer had been forthcoming, it may have been insignificant.

Second, Torres did not establish detrimental reliance on NDIC's representations. A promisor will only be liable for conduct intended to induce reliance on a promise "if the action induced amounts to a substantial change of position." 28 Am. Jur. 2d *Estoppel and Waiver* § 51 (2011); *see also Am. Sav. & Loan Ass'n*, 85 Nev. at 354, 455 P.2d at 41-42. "There can be no promissory estoppel where complainant's act is caused by his or her own mistake in judgment." 31 C.J.S. *Estoppel and Waiver* § 116 (2008).

The district court concluded that the "letters did not induce any measureable detrimental reliance" and that Torres's claims that she did not contact Mollinedo-Cruz and Perez-Castellano on her own because she relied on NDIC's representations were too speculative. Substantial evidence supports the district court's conclusions. Torres's lawyer testified at trial that he attempted to contact Mollinedo-Cruz and Perez-Castellano before filing Torres's claim. Torres also eventually acquired a default judgment against Mollinedo-Cruz and Perez-Castellano for the accident. Thus, Torres did not detrimentally rely on the letters because she did not refrain from trying to contact Mollinedo-Cruz and Perez-Castellano, nor did the letters prevent Torres from getting a judgment in her favor.

*The district court properly dismissed Torres's claim for breach of the implied covenant of good faith and fair dealing*

Prior to trial, the district court dismissed Torres's claim that NDIC breached the implied covenant of good faith and fair dealing. Torres argues that the district court erred in dismissing her claim and that this court should extend claims for bad faith. We disagree.

 

A decision to dismiss a complaint under NRCP 12(b)(5) is rigorously reviewed on appeal with all alleged facts in the complaint presumed true and all inferences drawn in favor of the complainant. *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). Dismissing a complaint is appropriate "only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Id.* at 228, 181 P.3d at 672. All legal conclusions are reviewed de novo. *Id.*

The implied covenant of good faith and fair dealing is a common law duty applicable in all contracts. *K Mart Corp. v. Ponsock*, 103 Nev. 39, 48, 732 P.2d 1364, 1370 (1987), *abrogated on other grounds by Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990). A breach of this duty can only occur when there is a special relationship between the parties, such as that between an insurer and insured. *Id.* at 49, 732 P.2d at 1370.

Third-party claimants do not have a contractual relationship with insurers and thus have no standing to claim bad faith. *Gunny v. Allstate Ins. Co.*, 108 Nev. 344, 345, 830 P.2d 1335, 1335-36 (1992). While we intimated in dicta in *Gunny* that a third-party claimant who is a specific intended beneficiary of an insurance policy might have a sufficient relationship to support a bad faith claim, *see id.* at 345-46, 830 P.2d at 1336, nothing in Nevada's absolute-liability statute creates a contractual relationship between an insurer and a third party for bad faith.

The majority of jurisdictions also conclude that third-party claimants do not have a private right of action against an insurer. *See, e.g., Scroggins v. Allstate Ins. Co.*, 393 N.E.2d 718, 721 (Ill. App. Ct. 1979) (holding that "the rule in Illinois and nearly all jurisdictions" is that

absent express statutory language, an injured third party cannot pursue a direct action against an insurer for breach of duty to exercise good faith); *Herrig v. Herrig*, 844 P.2d 487, 493-94 (Wyo. 1992) (observing that the majority of courts do not recognize a private right of action for a third-party claimant and Wyoming's statute did not create such a private right of action). And, furthermore, in the few jurisdictions that have allowed a bad faith claim against an insurer, the third-party claimants relied on express statutory language authorizing such direct actions. *See, e.g., Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 73 (N.M. 2004) (holding that an injured third-party claimant, after a judicial determination of fault, may sue an insurer for unfair claims practices in violation of New Mexico's Insurance Code under New Mexico statute that provided that "[a]ny person . . . who has suffered damages as a result of a violation [of the Insurance Code] by an insurer or agent is granted a right to bring an action in district court to recover actual damages" (internal quotations omitted)).

Here, NRS 485.3091 provides no express language that permits a third-party claimant to pursue an independent bad faith claim against an insurer. Absent such a provision, we will not read language into a statute granting a private cause of action for an independent tort. *See Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.*, 123 Nev. 61, 65, 156 P.3d 21, 23 (2007) ("[W]hen a statute does not expressly provide for a private cause of action, the absence of such a provision suggests that the Legislature did not intend for the statute to be enforced through a private cause of action."). Thus, we conclude that Torres does not have standing to pursue a bad faith claim.

SUPREME COURT
OF
NEVADA

(O) 1947A

Accordingly, we affirm in part, reverse in part, and remand this matter to the district court for further proceedings consistent with this opinion.[6]

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

[6]Torres also appeals the district court's award of costs to NDIC as the prevailing party pursuant to NRS 18.110. Because of our holding in this opinion, we reverse the costs award.