Emilio Nunez, J.
Plaintiff issued its automobile liability policy under the New York Automobile Assigned Eisk Plan on January 29, 1958 to one Daniel Matthows as owner of a 1950 Eoadmaster Buick automobile. On April 21,1958 George Koslab, an eight-year-old boy, was seriously injured when struck by the insured automobile. Plaintiff initiated an investigation of that accident and discovered that its policy had been procured by the assured by fraud. In this action the insurance company seeks a judgment declaring the policy void ah initio and a complete nullity from its inception. As alternative relief, it seeks to be declared entitled to disclaim liability because of failure of the assured to co-operate with the company.
The facts are undisputed. On January 25, 1958 Morris Eiley falsely represented himself to be Daniel Matthows, signed Matthows ’ name to an application for insurance under the plan, and falsely stated that Matthows was the owner of a 1950 Eoadmaster Buick. Actually the Buick was owned by Morris Eiley, imposter who posed as Matthows when he purchased and registered the car in Matthows’ name. Apparently no investigation was undertaken by the plaintiff until after the happening of the accident referred to, April 21, 1958. After ascertaining the fraudulent representations, and on July 1, 1958, plaintiff notified Daniel Matthows that it elected to declare the policy null and void effective as of January 29, 1958, the date of issuance.
The question for decision on the first cause of action is: Does the New York Automobile Assigned Eisk Plan of insurance, *410 which in explicit terms provides only for prospective cancellation, abrogate the insurer’s common-law right to void a policy from its inception on the ground that it had been obtained through fraud or misrepresentation! The Court of Appeals in Ætna Cas. & Sur. Co. v. O'Connor (decided Nov. 17, 1960 and reported in 8 N Y 2d 359) has answered the question posed in the affirmative. Recognizing the impact of Ætna, able counsel for the plaintiff has attempted to distinguish this case from Ætna wherein the court has squarely held that an insurer under the Assigned Risk Plan has no right to declare void a policy from its inception on the ground that it had been obtained by fraud or misrepresentation. The insurer may not rescind ab initio. The plan permits only prospective cancellation. In ¿Etna the fraud of the assured consisted in falsely stating in the application that he had not been convicted of any offense within the preceding’ three-year period, and so forth. Counsel points out that the applicant in that case was real, whereas in the case at bar Matthows did not apply for the insurance and no contract of insurance was ever issued to Matthows. Matthows himself made no false representations; he did not own the insured car and did not operate the car. It is claimed that as far as Matthows and the insurer are concerned, there was never any contract between them and that the entire matter was illusory and a hoax concocted by Riley. The insurance company claims that under these circumstances the purported policy was a nullity and that it was justified in declaring it void from its inception. I do not agree with this reasoning, nor can I see a distinction which would entitle them to judgment in this case. The applicant was real; it was Morris Riley, posing as Matthows. The car was real; it was a 1950 Buick automobile which was permitted to be driven on the streets of New York because this policy of insurance covering the automobile had been issued and was in force on the date this child was injured. Under the Assigned Risk Plan the defendant would have been compelled to issue the policy whether the applicant’s name were Riley, Matthows, Smith or Fernandez. Obviously Riley was unable to register an automobile in his name (the proof was that he had had a previous accident and that his owner’s and operator’s license had been revoked), and he resorted to the fraudulent and illegal scheme of using the name of Matthows who had been a fellow employee .some years before. Upon the happening of the accident, Matthows attempted to cover up for Riley and at first stated to the insurance company that he was the insured, the owner of the car, and that Riley had been driving it with his consent at the time of the accident. Later he repudiated these *411 statements and declared that Biley had obtained the insurance and registered the car in his, Matthews’, name, all without his knowledge or consent.
In AEtna, Judge Ftjld, writing for a unanimous court, reviews the history of the Assigned Bisk Plan, its purposes and enactment. It would serve no useful purpose to quote at length from the opinion of our learned Judge Ftjld. After an exhaustive analysis of the plan, the court said (p. 364): “ That there is no right to rescind the assigned risk policy does not mean that the carrier is deprived of all reasonable redress against the insured who misrepresents material facts in order to obtain coverage, since the Plan expressly provides for cancellation under these circumstances. The effect of the Plan is to enforce upon the insurer the necessity to discover fraud at the earliest possible moment, before an accident occurs and the rights of innocent injured third parties have intervened. In this respect, the Plan merely reflects the oft-repeated legislative recognition that liability insurance is not the concern solely of the insured and his insurer. (See, e.g., Insurance Law, § 167, subd. 1, par. [d]; Vehicle and Traffic Law, § 345, subd. [i], par. [1]; Lauritano v. American Fid. Fire Ins. Co., 3 A D 2d 564, 567-568, affd. 4 N Y 2d 1028.)
“ AEtna did, in this case, actually conduct an early investigation of O’Connor and, if that investigation had been performed properly, the insured’s misrepresentation would have been discovered and Afina could have cancelled, pursuant to section 18 of the Plan, long before the Hamiltons were injured. While, therefore, Afína may ultimately be held on a policy obtained by fraud, its liability is in a very real sense attributable to its own fault, and the true beneficiary is not the wrongdoer, but his innocent victims.”
Had Allstate conducted a proper investigation within a reasonable time of the issuance of the policy, it would have, or should have, discovered the fraud and it could have cancelled the policy long before an innocent third party was injured by the insured automobile. Having failed to do so, I hold that Allstate is not entitled to rescind the contract ab initio.
As to the second cause of action, I find no evidence of lack of co-operation with regard to the happening of the accident, notice thereof, statements, etc. The lack of co-operation complained of was the attempt to conceal and further perpetrate Biley’s fraud upon the plaintiff. Plaintiff has not established its right to a declaratory judgment in its favor, either under the first or second causes of action. Judgment will be entered dismissing the complaint, with costs.