876 P.2d 1203

**MIDLAND RISK MANAGEMENT COMPANY, a Tennessee corporation, Plaintiff/Appellant,**

v.

**Dovie Pauline WATFORD and Robert M. Watford, Defendants/Appellees.**

**No. 2 CA–CV 94–0037.**

Court of Appeals of Arizona, Division 2, Department B.

June 30, 1994.

Johnson & Whiteman by H. Wayne Johnson and Blake E. Whiteman, Scottsdale, for plaintiff/appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Ralph E. Hunsaker and Christopher Robbins, Phoenix, for defendants/appellees.

## OPINION

ESPINOSA, Presiding Judge.

Appellees Dovie Pauline Watford and Robert M. Watford (the Watfords) were involved in an automobile accident with Phillip Genaro Sanchez while he was driving a vehicle insured by appellant Midland Risk Insurance Company (Midland) in the name of his wife, Tamara Louise Sanchez.[1] Midland denied automobile liability coverage for any claims arising out of the accident on the ground that Tamara Sanchez had obtained the policy from Midland by fraudulent misrepresentations and filed this declaratory judgment action. The trial court granted the Watfords' motion for summary judgment and denied Midland's cross-motion for summary judgment, finding that A.R.S. § 28–1170(F) mandates automobile liability insurance coverage

---

1. Appellees' accident was one of four separate accidents that Phillip Sanchez was involved in on March 27, 1992. Although ·other parties were involved in the original lawsuit, the only claims on appeal are those of the Watfords.

after an injury has occurred regardless of whether the policy was fraudulently procured. This appeal followed the denial of Midland's motion for reconsideration.

## Facts

The facts are uncontested. In February 1992, Tamara Sanchez completed and signed a Personal Automobile Application (Application) for automobile liability insurance with Midland in which she stated that she was single, that there were no other drivers in her household, and that there were no other residents of her household over the age of 14. Later, at Midland's request, she completed and signed a Driver Disclosure Certification which required disclosure of all members of her household age 14 and over who were not listed as drivers or excluded on her Application. Sanchez again represented that there were no other residents of her household age 14 or over. In fact, when Sanchez completed the Application and Driver Disclosure Certification, she was married to Phillip Genaro Sanchez, and they resided together in Peoria, Arizona.

In March 1992, Phillip Sanchez was operating the vehicle insured in Tamara's name when he rear-ended a vehicle driven by Dovie Watford. As a result of this accident, Midland learned of Phillip Sanchez's existence and further discovered that he had been convicted of driving under the influence of alcohol, driving on a suspended license on two occasions, and violating the Financial Responsibility Act,[2] and that his driving privileges had been revoked for almost a year. Pursuant to Midland's underwriting guidelines and A.R.S. § 28–1170(B)(3), Midland would have excluded Phillip Sanchez from coverage had he been previously disclosed.

## Standard of Review

■ In reviewing a summary judgment, we view the evidence in a light most favorable to the losing party, and give that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 799 P.2d 810 (1990); *Wisener v. State,* 123 Ariz. 148, 598 P.2d 511

2. A.R.S. § 28–1161, *et seq.*

(1979). Summary judgment is appropriate where the facts are settled and a pure question of law is presented. *United California Bank v. Prudential Ins. Co.,* 140 Ariz. 238, 681 P.2d 390 (App.1983). We review such questions de novo. *Employer's Mut. Casualty Co. v. McKeon,* 170 Ariz. 75, 821 P.2d 766 (App.1991).

## Liability of the Insurance Carrier

■ The primary issue raised by this appeal is whether A.R.S. § 28–1170(F)(1) precludes an automobile liability insurer from avoiding coverage as to injured third parties even though the policy providing coverage was procured by the insured's deliberate and material misrepresentations in the insurance application. The trial court determined that, as a matter of law, § 28–1170 does not permit Midland to avoid coverage for the Watfords' claims.

The parties agree that but for the accident Midland could have rescinded the policy it issued to Tamara Sanchez as a result of her fraud. Midland, however, maintains that despite the accident it may avoid liability coverage in the instant case, contending that A.R.S. § 28–1170(F)(1) is inapplicable and the resolution of this issue is controlled by A.R.S. § 20–1109, which provides in part:

Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy … or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

Although fraud is a policy defense under § 20–1109, Midland's argument fails to recognize the full import of the Motor Vehicle

Safety Responsibility Act, and specifically § 28–1170(F)(1), which provides:

Every motor vehicle liability policy is subject to the following provisions which need not be contained in the policy:

1. The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute when injury or damage covered by the motor vehicle liability policy occurs. The policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury of damage, and no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy.

This statute broadly mandates that an insurer's obligation to provide coverage "shall become absolute" whenever injury occurs. Unlike the provisions of § 20–1109, which apply to insurance policies of all kinds, § 28–1170 is applicable only to automobile insurance policies. It is a fundamental rule of statutory construction that courts will construe conflicting statutes in harmony when possible. *Baker v. Gardner,* 160 Ariz. 98, 770 P.2d 766 (1988). Where two statutes dealing with the same subject are seemingly in conflict, the more specific statute controls. *Pima County v. Heinfeld,* 134 Ariz. 133, 654 P.2d 281 (1982). As a matter of statutory construction, the general provisions of § 20–1109 do not override the more specific provisions of § 28–1170(F)(1). *See, e.g., Farmer's Insurance Exchange v. Rose,* 411 F.2d 270 (9th Cir.1969).

This result is further supported by our supreme court's determination that every automobile liability policy is subject to A.R.S. § 28–1170(F)(1), whether or not "certified" under the Act or expressly stated in the insurance contract. *See Sandoval v. Chenoweth,* 102 Ariz. 241, 428 P.2d 98 (1967); *Jenkins v. Mayflower Ins. Exchange,* 93 Ariz. 287, 380 P.2d 145 (1963). Because this was an automobile liability policy, once the Watfords were injured in the accident, § 28–1170(F)(1) superseded § 20–1109.

Midland relies on our decision in *Keplinger v. Mid–Century Insurance Company,* 115 Ariz. 387, 565 P.2d 893 (App.1977), for the proposition that § 20–1109 is controlling due to the fraudulent conduct which occurred here. We have reexamined *Keplinger* and can find no support for Midland's conclusion. In that case, the accident victim appealed the trial court's finding that an automobile liability policy issued by the insurer to her husband was vitiated by his alleged misrepresentations in the application and did not cover injuries she sustained as a passenger in the insured car. Although we cited § 20–1109 as authority for the general policy defense of fraud or misrepresentation, we concluded that the carrier had not sustained its burden of establishing grounds for avoiding liability primarily because it had not shown it would have refused coverage for the loss had it known of the intended use of the insured vehicle. Thus, it was not necessary to consider the applicability of § 28–1170(F)(1).

Alternatively, Midland contends that even if A.R.S. § 28–1170(F)(1) is applicable, it does not mandate coverage under all circumstances and would not here. Midland asserts that § 28–1170(F)(1) must be interpreted to exclude from its application those insurers who undertake a reasonable investigation of insurability but are unable to discover the fraudulently concealed information. This is so, Midland argues, because it had the right to specifically exclude Phillip Sanchez under § 28–1170(B)(3), and would have had it known of his existence. Thus, requiring coverage under the instant circumstances places form over substance and promotes the fraudulent procurement of automobile insurance coverage. Although there is merit to Midland's argument, we find it contrary to the plain language and intent of § 28–1170(F)(1).

The primary principle of statutory interpretation is to determine and give effect to the legislative intent behind the statute, considering among other things the context of the statute, the language used and the spirit and purpose of the law. *See Martin v. Martin,* 156 Ariz. 452, 752 P.2d 1038 (1988); *State Farm Mutual Auto Ins. Co. v. Wilson,* 162 Ariz. 251, 782 P.2d 727 (1989). The Financial Responsibility Act was enacted in response to social and economic problems

arising from the increasing casualty rate on Arizona streets and highways. *Sandoval, supra.* Its primary purpose is the protection of the travelling public from financial hardship resulting from the operation of motor vehicles by financially irresponsible persons. *Farmers Ins. Group v. Home Indemnity Co.,* 108 Ariz. 126, 493 P.2d 909 (1972); *Schwab v. State Farm Fire & Casualty Co.,* 27 Ariz. App. 747, 558 P.2d 942 (1976). Midland suggests, however, that this purpose has since been undercut by the enactment of the Uninsured Motorist Act, A.R.S. § 20–259.01. We disagree. The protection afforded by that act is not applicable in all situations and may not necessarily protect all third parties in accidents caused by uninsured drivers. Indeed, the record before us does not indicate that it is applicable in the instant case.

As noted above, § 28–1170(F)(1) provides that the liability of an insurance carrier becomes "absolute" whenever injury or damage occurs. Further, "no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy." The language of this section is straightforward. When a statute's language is clear and unequivocal, it is determinative of the statute's construction. *Janson v. Christensen,* 167 Ariz. 470, 808 P.2d 1222 (1991). In light of the plain language of § 28–1170(F)(1) and the legislature's overriding concern for victims of automobile accidents, we conclude that Midland's liability as to the Watfords became absolute upon the occurrence of the accident.

Our conclusion is bolstered by the decisions of our supreme court and other courts which have interpreted § 28–1170(F)(1). In *Sandoval, supra,* the court held that the insurer was liable to the injured third party despite acts by the insured in contravention of the express terms of the insuring policy, specifically, the insured's failure to notify the insurer that he had been served with a complaint for damages arising out of an accident. The court found this general defense precluded by § 28–1170(F)(1). Similarly, the Ninth Circuit Court of Appeals held that that law bars insurance companies from raising defenses of lack of cooperation by an insured, *State Farm Mutual Automobile Ins. Co. v.*

*Thompson,* 372 F.2d 256 (9th Cir.1967), and operation of the vehicle by an intoxicated driver. *Weekes v. Atlantic National Ins. Co.,* 370 F.2d 264 (9th Cir.1966).

Indeed, the Ninth Circuit has addressed nearly the identical issue raised here, concluding that § 28–1170(F)(1) precludes an insurer from raising the defense of fraud under § 20–1109. In *Farmers Ins. Exchange v. Rose, supra,* the insurance carrier sought a judicial declaration that the policy issued to its insured was void as a result of fraudulent and material misrepresentations by its insured and did not provide coverage to injured third parties arising out of an auto accident caused by the insured. The court held that § 28–1170(F)(1) mandated coverage despite the insured's fraudulent representations regarding his past driving and insurance record. In support of its conclusion, the court reasoned:

> The defense which the company here wishes to assert—fraud in applying for the policy—is different from those held unavailable in the cases referred to above. However, it is difficult to see how the company could be any more prejudiced by a fraudulent statement in an application than it would be by the insured's lack of cooperation, operation of the vehicle by a drunk driver, or failure to notify the company of the commencement of a damage suit.... Moreover, the [accident victims] were ... blameless for [the insured's] fraud ... [and] stand to suffer as much if the company is permitted to prevail on the fraud defense as they would if it were permitted to prevail on any of these other defenses.

411 F.2d at 272.

Similarly, in *Allstate Ins. Co. v. Dorr,* 411 F.2d 198 (9th Cir.1969), the Ninth Circuit affirmed the lower court's finding pursuant to § 28–1170 that the liability of the insurance carrier became absolute upon the injury of the third parties, regardless of the fact that the insured had procured the policy by fraud. The court further concluded that the statute was not unconstitutional in its application.

We think that the economic burden placed by the Arizona statute upon compa-

nies which sell liability insurance of paying an occasional claim which they would not, but for the statute, have had to pay, falls easily within the power of a legislature to legislate.

411 F.2d at 201. Although we are not bound by these decisions, we find them persuasive. Midland, however, distinguishes *Rose* and *Dorr*, arguing that in both these cases the insurer knew the identity of its insured and could have discovered the fraud prior to the accident had it more thoroughly investigated the insured's driving history.

While we might agree that here Midland had no reasonable opportunity to discover the fraud prior to the accident, this fact is not enough to sway our conclusion. The legislature and the courts of this state have expressly stated that the Financial Responsibility Act must be liberally construed to foster its main objective of making available to automobile accident victims the fullest benefits of insurance coverage. *Geyer v. Reserve Ins. Co.*, 8 Ariz.App. 464, 447 P.2d 556 (1968). If inequity to insurers results, it is a matter that must be taken up with the legislature. Accordingly, we conclude that A.R.S. § 28–1170(F)(1) mandates coverage following an accident with injuries or damage notwithstanding the insurer's inability to discover fraudulent representations made in the insurance application. Our holding accords with decisions of other jurisdictions that have considered similar cases. *See e.g. Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969); *Safeway Ins. Co. v. Harvey*, 36 Ill.App.3d 388, 343 N.E.2d 679 (1976); *American Underwriters Group v. Williamson*, 496 N.E.2d 807 (Ind.App. 3 Dist.1986); *Continental Western Ins. Co. v. Clay*, 248 Kan. 889, 811 P.2d 1202 (1991); *Fisher v. New Jersey Automobile Full Ins. Underwriting Assoc.*, 224 N.J.Super. 552, 540 A.2d 1344 (1988); *Allstate Ins. Co. v. Matthews*, 40 Misc.2d 409, 243 N.Y.S.2d 114 (1963); *Aetna Casualty & Surety Co. v. O'Connor*, 8 N.Y.2d 359, 170 N.E.2d 681, 207 N.Y.S.2d 679 (1960); *Odum v. Nationwide Mutual Ins. Co.*, 101 N.C.App. 627, 401 S.E.2d 87 (1991). *See also* 7 Am. Jur.2d, Auto Insurance § 37 (1980); C.C. Marvel, annotation, *Rescission or Avoidance for Fraud or Misrepresentation of Compulsory, Financial Responsibility, or Assigned Risk Automobile Insurance*, 83 A.L.R.2d 1104 (1962).

### Attorneys' Fees

█ Appellees request attorneys' fees and costs incurred in the trial court pursuant to A.R.S. § 12–341.01 and ask that we remand this matter for the court to determine the amount of attorneys' fees recoverable. We decline to do so.

The record and briefs reflect that the Watfords at no time prior to the entry of judgment requested fees, not even in their answer to Midland's complaint. Despite this fact, the trial court awarded the Watfords attorneys' fees in a second judgment dated December 14, 1992. This judgment was subsequently vacated when the court was made aware that the notice of appeal had been previously filed. *See Trebilocox v. Brown & Bain, P.A.*, 133 Ariz. 588, 653 P.2d 45 (App. 1982) (trial court may not award attorneys' fees after the filing of a notice of appeal), *overruled on other grounds, Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987).

The Watfords concede that they did not comply with Rule 3.7(e)(1), Local Rules of Practice for Maricopa County, 17B A.R.S., which requires that a claim for attorneys' fees pursuant to A.R.S. § 12–341.01 be made "in the pleadings, in the joint pretrial statement, or by written notice filed and served prior to the trial or other determination on the merits of the cause." Despite their inaction, they assert that their noncompliance should not prohibit them from a "common and universally accepted award of attorney's fees in an action arising out of contract." We also note that appellees failed to raise this issue by cross-appeal. Absent a cross-appeal, an appellate court may not alter the lower court's judgment "to enlarge the rights of the appellee." *See Larkin v. State ex rel. Rottas*, 175 Ariz. 417, 857 P.2d 1271 (App.

174

1992); Ariz.R.Civ.App.P. 13(b)(3), 17B A.R.S. Moreover, even if the issue were properly raised, the Watfords offer no reason for their failure to comply with Rule 3.7(e)(1).

The judgment of the trial court is affirmed. Appellees' timely request for fees and costs on appeal pursuant to A.R.S. § 12–341.01 is granted upon compliance with Ariz.R.Civ. App.P. 21(c), 17B A.R.S.

DRUKE, C.J., and HATHAWAY, J., concur.