STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-08-662
REC                  -6/23/2010

NORTH EAST INSURANCE CO.,
     Plaintiff

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT

v.

SANDRA HUTCHINSON, JOSHUA
WEEKS, SAMANTHA YOUNG,
REBEKAH ALLEY, SARAH BETTS,
JOHN THOMAS, and BRUCE K.
EATON d/b/a SKIP EATON PAVING CO.,
     Defendants

STATE OF MAINE
Cumberland, ss Clerk's Office

JUN 23 2010

RECEIVED

## BEFORE THE COURT

Before the court are the following motions for summary judgment filed

pursuant to Rule 56 of the Maine Rules of Civil Procedure:

1. Defendant/Cross-Claimant/Counter-Claimant Samantha Young ("Young") seeks summary judgment on Plaintiff North East Insurance Company's ("North East") Complaint for Declaratory Judgment.

2. North East moves for summary judgment on its Complaint for Declaratory Judgment seeking a judgment declaring that it has no duty to defend or indemnify the Defendants with respect to claims arising from the motor vehicle accident on July 3, 2008.

3. Defendant Rebekah Alley ("Alley"), Sarah Betts ('Betts"), and Bruce Eaton d/b/a/ Skip Eaton Paving Company (hereinafter "Eaton") each join Co-Defendant Young's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment should be granted if there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. M.R.

Civ. P. 56(c). In considering a motion for summary judgment, the court should

consider the facts in the light most favorable to the non-moving party, and the

1

court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g.*, *Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Each fact contained in the supporting statement of material facts shall be supported by a record citation. M.R. Civ. P. 56(h)(1). A contested fact is "material" if it could potentially affect the outcome of the suit under the governing law. *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. A fact is "genuine" if there is sufficient evidence supporting the claimed fact to require a fact-finder to choose between competing versions of facts at trial. *Id.* For the purposes of summary judgment, factual disputes and ambiguities must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

## BACKGROUND

### 1. Procedural Background

This suit centers on a dispute over the status of an auto insurance policy Sandra Hutchinson (hereinafter "Hutchinson") purchased from the Varney Agency, an insurance agent of the Plaintiff Northeast Insurance Company. The question is whether Hutchinson's car insurance policy through North East covered her son Joshua Weeks (hereinafter "Weeks"). At all times pertinent to

2

this suit Sandra Hutchinson was a resident of Deer Isle, Maine and was married to Michael Hutchinson.[1]

The court notes the procedural facts of this case. On November 18, 2008, North East filed a Complaint seeking declaratory judgment that it has no duty to defend or to indemnify Weeks, Sandra Hutchinson or Michael Hutchinson with respect to claims arising from a car accident on July 3, 2008. North East claims that in the process of applying for insurance Hutchinson made a fraudulent misrepresentation, omission, concealment of fact, and/or incorrect statement about the number of licensed drivers in the household. North East claims that Hutchinson failed to disclose that Joshua Weeks was a licensed driver in her household, such that Hutchinson's insurance policy was void *ab initio* pursuant to 24-A M.R.S. § 2411 and Weeks was not covered under the policy.

Service of process was made on both Hutchinson and Weeks on November 20, 2008. Hutchinson and Weeks failed to respond to the Complaint within 20 days as required by M.R. Civ. P. 12(a). North East has not sought a default against Hutchinson and Weeks on the Complaint, and to date, Hutchinson and Weeks have not responded to the Complaint and have had minimal involvement in the defense of North East's suit. On February 3, 2009, Defendant/ Cross-Claimant/ Counter-Claimant Cheryl Young, as the mother and next friend of Samantha Young, filed a cross claim against Hutchinson and Weeks. Hutchinson and Weeks again failed to respond within 20 days of service. Upon Cheryl Young's request, the Court entered a default against Hutchinson and Weeks on March 25, 2009, pursuant to M.R. Civ. P. 55(a).

---

[1] Sandra Hutchinson no longer lives in Deer Isle, Maine. Her last known residence and place of service was in Brooksville, Maine.

On February 24, 2009, North East propounded to Hutchinson a 29-paragraph request for admissions (the "Hutchinson Request for Admissions").[2] Hutchinson failed to answer the request for admissions, and the facts in the request for admissions are deemed admitted against her. *Farrands v. Melanson*, 438 A.2d 910, 912 (Me. 1981). On or about March 24, 2009, Young responded to the Hutchinson Request for Admissions in an attempt to preserve the issues in the event that Hutchinson and Weeks did not respond. On April 27, 2009, the court: (1) granted North East's Motion to Strike Young's responses to the Hutchinson Request for Admissions, such that those responses have no bearing on whether the requests are deemed admitted; and (2) also denied Young's Motion to Stay the Discovery Deadline so that Young could gather more facts necessary for the court to decide North East's declaratory judgment action.

The present posture of this case is unique. It is clear from the procedural record that Hutchinson and Weeks are not engaged in this litigation. North East could have filed a request for a default judgment against Hutchinson and Weeks but has not done so. Instead North East propounded to Hutchinson the request for admissions, and relied upon the request for admissions in the statement of material facts to support this motion for summary judgment. Predictably, Hutchinson and Weeks have not entered an appearance to defend the allegations in North East's summary judgment motion. At summary judgment, "[a]ll

---

[2] "[R]equest for admissions are not a discovery device for ascertaining new facts, but a procedure for obtaining admissions for the record of facts already known. The procedure should be used only in situations where the attorney making the request truly believes that there is no room for doubt or argument and where the request is susceptible of categorical admission or denial." Field, McKusick & Wroth, *Maine Civil Practice* § 36.1 at 533-34 (2d ed. 1970). North East argues that the admissions are based on and supported by the testimony of Hutchinson, Weeks, and employees of the Varney Agency – Jennifer Day and David Ernst.

material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party." *Gerrity Co. v. Lake Arrowhead Corp.*, 609 A.2d 293, 294 (Me. 1992). As to Hutchinson and Weeks, the facts North East asserts in its statement of material facts are deemed admitted.

Young objects to paragraphs 1-8, 10-17, 19-25, 27-28, and 30-34 of North East's statement of material facts because those paragraphs rely on the Hutchinson Request for Admissions. Young correctly argues that the other defendants should not be bound by Hutchinson's failure to respond to the request for admissions. Generally, when a defendant fails to answer a request for admissions, the facts in the request are deemed admitted. *Farrands*, 438 A.2d at 912, M.R. Civ. P. 36. However, "[a]n admission binds only the specific party to whom the request is directed [and] admissions resulting from a party's failure to answer a request for admissions binds only the non-responding party, not co-parties." 7 Moore's Federal Practice § 36.03[5] (2010) citing *Riberglass v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566-67 (11th Cir. 1987); *see also Platz Assocs. v. Finley*, 2009 ME 55, ¶ 14, 973 A.2d 743, 748 n. 5 (stating: "Implicit in the nature of M.R. Civ. P. 36(b) is the limitation that such an admission will bind only the party making it.") (internal citations omitted).

It would be unfair and prejudicial if the summary judgment facts North East asserted against Hutchinson and Weeks were similarly applied to the other defendants in this case. To do so would (1) elevate form over substance and (2)

deny the other defendants the opportunity to actually litigate whether

Hutchinson and Weeks were covered by an insurance policy with North East.[3]

Accordingly, in determining North East's motion for summary judgment

against Defendants Alley, Young, Betts, John Thomas, and Eaton, the court will

closely examine North East's statement of material facts. "In considering

whether to grant or deny a motion for summary judgment, the court is to

consider only the portions of the record referenced to, and the material facts set

forth in the Me. R. Civ. P. 7(d) statements." *Corey v. Norman, Hanson & Detroy*,

1999 ME 196, ¶ 13, 742 A.2d 933, 938. (citations omitted). The court has no

independent duty to search or consider any part of the record not referenced in

the statements of material fact.

For the Co-Defendants – Defendants Alley, Young, Betts, John Thomas,

and Eaton – the court will not consider the statements in paragraphs 25, 32, and

33 of North East's statement of material facts. These paragraphs cite only to the

Hutchinson Request for Admissions and are only binding on Hutchinson.

---

[3] Apparently, Young had propounded upon Hutchinson a request for admissions that aimed to contradict the request for admissions North East propounded upon Hutchinson. Letter from Attorney Eisenberg to the Clerk of the Cum. Cty. Super. Ct. (Oct. 2, 2009). In her October 2, 2009 letter, Attorney Eisenberg expressed concern about the propriety of a request for admissions that was not based on known facts. *See supra n.2.* She claimed that the statements asserted in the request for admissions Young propounded upon Hutchinson were baseless and contradicted the record. However, it can be reasonably questioned if the statements in the request for admissions North East propounded upon Hutchinson were based on known facts as well. For example, during Hutchinson's examination under oath, Hutchinson stated she does not recall being asked questions by Varney Agent Day. *See infra n.6.* Yet the request for admissions North East propounded to Hutchinson make statements about Hutchinson's state of mind: "Hutchinson *knew* that her answers . . . were false" (Hutchinson RFA, ¶ 11); "Hutchinson *intentionally* provided the Varney Agency only with information" about her and her husband (Hutchinson RFA, ¶ 27); and "she was *aware* that [Weeks] was not covered by any automobile insurance policy" (Hutchinson RFA, ¶ 29). The procedural effect of those dueling requests for admissions is the creation of an evidentiary standoff.

Several of the paragraphs in North East's statement of material facts cite to both the request for admissions and an additional record citation. For these "mixed" citations, the court has examined the record to determine if the statement is supported without considering the reference to the Hutchinson Request for Admissions. The court has also considered the paragraphs in North East's statement of material facts which the Co-Defendants have admitted.

## 2. Factual Background

Weeks was born on July 12, 1991, and received his driver's license on August 23, 2007 when he was 16 years old. Weeks was a resident of Hutchinson's household from birth until some time after July 3, 2008. At all times relevant to this suit, Hutchinson was the owner of a 1997 Mercury Tracer. Hutchinson provided the Mercury Tracer to Weeks to drive with her full knowledge and consent that Weeks would be operating the vehicle. On July 3, 2008, Hutchinson asked Weeks to take her Mercury Tracer and drive his younger sister Tricia to Stonington, Maine. Weeks drove the Mercury Tracer to Stonington, dropped off his sister there, and picked up four teenage friends: Rebekah Alley, Samantha Young, Sarah Betts, and John Thomas. En route back to Deer Isle, on North Maine Street (Route 15) in Stonington, Maine, Weeks allowed the Mercury Tracer to cross the centerline of the road, and collided head-on with the oncoming dump truck in the other lane. Bruce Eaton owned the dump truck. As a result of this collision, all four passengers in the Mercury Tracer – Alley, Young, Betts, and Thomas – sustained injuries and have asserted claims against Weeks. Eaton has asserted a claim for property damage to his dump truck and other consequential damage against Weeks.

According to North East, on April 2, 2008, Hutchinson placed a telephone call to the Varney Agency in Ellsworth, Maine, an agent of North East, seeking to insure two vehicles for herself and/or Michael Hutchinson. She was seeking insurance only for herself and her husband. Hutchinson contacted Varney because she had heard they could obtain car insurance at a low price and she could not afford the high rates on her previous policy. Hutchinson spoke to Jennifer Day ("Day"), a customer service representative at Varney. Day obtained from Hutchinson the information necessary for Varney to complete the insurance application and to obtain premium quotes from several auto insurers. During the phone conversation on April 2, 2008, Day obtained Hutchinson's address, telephone number, date of birth, occupation, and Social Security number, as well as the same information for her husband Michael Hutchinson. During the conversation, Hutchinson identified the two vehicles that she wished to insure: a 1996 GMC Sonoma pickup truck – to be driven exclusively by Michael Hutchinson; and a 2002 Ford Focus sedan – to be driven exclusively by Sandra Hutchinson. (Day Aff. ¶ 2).

In the course of obtaining information from Hutchinson in order to complete the application, Day asked Hutchinson a series of 17 pre-printed yes-or-no questions, and recorded Hutchinson's answers to these questions. (Day Aff. ¶ 3). Hutchinson answered all of the questions that Day asked of her during this phone conversation. When Day asked each of these questions and input Hutchinson's answers, she was working in a computer program that required her to input an answer for each question before it could advance to the next

8

question.[4] According to North East, Hutchinson answered "no" to all of the questions except this one, to which she answered "yes": "Any coverage declined, cancelled, or non-renewed during the last three years?" (Day Aff. ¶ 10).

North East asserts that among the questions to which Hutchinson answered "no" were: "Are there any other residents in the household 14 years or older?" and "Are there any other drivers licensed in or out of the household?" During the entire phone conversation with Day on April 2, 2008, Hutchinson made no mention of her son Weeks, or any other resident in her household apart from herself and her husband. (Day Aff. ¶ 4). North East asserts that Hutchinson's answers were false because at the time she was applying for the insurance her son, Weeks, was 16 years old and a resident of her household, and had had his Maine driver's license since August 23, 2007. The Co-Defendants cite Hutchinson's examination under oath (EUO) and assert that Hutchinson does not recall whether Day asked her a bunch of yes-or-no questions.[5]

---

[4] This statement is supported by the deposition transcript of Christine Nadeau, the Assistant Vice President and Regional Claims Manager for the Tower Group Companies. Nadeau's deposition is attached as Exhibit 5 to North East's summary judgment record. Defendant Young objects to this statement claiming that Nadeau does not have personal knowledge of what Day did when communicating with Hutchinson. However, Nadeau's statement is within her personal knowledge, as she is testifying about how the computer program that Day was operating works.

[5] Hutchinson EUO at 14:22-24 provides:
    Q: Do you recall her asking whether there were any other people living in your household over the age of 14?
    A: I don't recall. I honestly don't.
Hutchinson EUO at 36:3-10 provides:
    Q: Going back to April when you first called the woman at Varney and then spoke to the gentleman at Varney, do you remember anyone asking you who were the other people that live in this household?

Using the information provided by Hutchinson, Day obtained premium quotes from several different insurers and determined that North East offered the coverage Hutchinson had requested at the lowest premium of the insurers contacted. On April 4, 2008, Hutchinson went to the Varney office in Ellsworth, Maine – leaving her children in the car – where she signed the Maine Personal Auto Application. Pl.'s SMF citing Ernst Aff., Ex. 6. The Maine Personal Auto Application was prepared by Day using the information obtained from Hutchinson during their telephone conversation. Under the category of "Resident & Driver Information" it states: "List all residents & dependents (licensed or not) and regular operators." The only names listed under "Resident & Driver Information" were Hutchinson's and her husband's names. The "Applicant's Statement" above the signature block for the Maine Personal Auto Application states: "I have read the above application and declare that to the best of my knowledge and belief all of the foregoing statements are true . . . ." Below this statement is Hutchinson's signature. North East issued to Hutchinson a personal auto policy, insuring a 1996 GMC Sonoma pickup truck and a 2002 Ford Focus, effective from April 4, 2008 to April 4, 2009, with a liability policy limit of $100,000 per person / $300,000 per accident.[6]

---

A: I don't recall them asking me, actually, I really don't. I voluntarily said, I need insurance for me and my husband. At that time it was just him and I that I was looking to get insurance for.

[6] Defendant Young claims that the declarations page of the insurance policy is not properly before the court, alleging that the affidavit of David Ernst does not certify the Declarations Page as a true and accurate copy of the Declarations Page. To support this claim, Young cites *The Norfolk & Dedham Group of Ins. Cos. V. Kostovick*, 2009 Me. Super. LEXIS 50, n.4 (Mar. 11, 2009)(Crowley, J.). Young's claim is inapposite. In *Kostovick*, the report was not properly before the court because it was not attached to the affidavit. The declarations page of the insurance policy is properly before the court.

When Hutchinson went to the Varney Agency on April 4, 2008 to sign documents for her new insurance policy, she was presented with a preprinted form entitled "New Policy Customer Review Sheet." (Betts SAMF, ¶ 4, Ex. 2). The "New Customer Policy Review Sheet" is a checklist that new customers are asked to initial. The second paragraph of the form states:

> I understand that every insurance policy has conditions and limitations. The agent has advised me to take the time to review my policy when I receive it and to contact the agency if I have any questions or concerns about any part of the policy I receive and at any time during future policy renewals.

Betts SAMF, ¶ 7, Ex. 2. Hutchinson acknowledged this statement by signing her initials next to the paragraph. Christine Nadeau, the regional claims manager for North East's parent company Tower Group Companies, states that when North East sends out a copy of a policy to its insureds, it includes a statement on the jacket of the policy telling the customer to review the policy carefully. (Betts SAMF, ¶ 18). The reason this language is on the jacket of the policy, suggesting that the insured read the policy carefully, is so that the insured has an opportunity to see exactly what it is they have purchased, to see whether they are covered or not, and to see what they are covered for. Defendant Betts claims that Hutchinson never received the actual insurance policy so that she had no opportunity to actually review the policy prior to the accident. (Betts SAMF, ¶ 20).[7]

---

[7] Paragraph 20 of Betts' Statement of Additional Material Facts cites to pages 24 and 25 of Hutchinson's Examination Under Oath, which provides:

> Q: [Attorney] This document I've marked as Exhibit 4. This would be the first page of your actual insurance policy, but you may not have received that that very day. You might have gotten that later. Do you recall ever seeing this before?
>
> A: [Hutchinson] No, I never received a policy.

North East responds to Betts' argument by claiming (1) it is Hutchinson's fault that she never followed up with North East to receive a policy (Pl.'s Reply SMF, Section II, ¶ 20); and (2) because North East's basis of rescission is fraud, there is no reason to believe Hutchinson's review of the policy would have caused her to amend the information she supplied to Varney.

On May 6, 2008, Hutchinson called Varney and spoke to Day again. Hutchinson requested that two vehicles – the 1997 Mercury Tracer and a 1993 Jeep Cherokee – be added to the auto policy and that her 20-year-old daughter Shanna Weeks be added as a driver on the policy. During the telephone conversation, Day noticed that Hutchinson was now insuring four vehicles, but naming only three drivers, so Day asked Hutchinson again whether there were any other licensed drivers in the household, and Hutchinson said no. (Day Aff. ¶ 9). When Hutchinson added an additional vehicle and Shanna Weeks to the policy, the additional premium was $936 per year. At no time during this phone call did Hutchinson make any mention of Joshua Weeks. On June 20, 2008, Hutchinson placed another phone call to Varney and requested that the 2002 Ford Focus be deleted from the policy, and that a 2000 Ford Explorer be added in its place. During this call Hutchinson never mentioned Joshua Weeks.

---

Q: You never received a policy?
A: No, because what happened is she was going to fax it over to me - - I'm sorry, e-mail it to me on my computer, and my ID card, but for some reason it didn't go over. I don't know why I never received it in my e-mail, so I never got a policy, or never received one I should say. I never thought to ask for one afterwards either.
Q: After the accident:
A: Before - - yeah, well, I'm not even sure. I think I did ask for one after the accident but I don't remember at this time.

According to North East, had Hutchinson disclosed the other licensed driver in her household, North East would have required his inclusion on the policy and charged an additional premium for the risk. North East would not agree to insure some but not all licensed drivers in a household unless the other driver(s) provided proof of other insurance. North East claims that when Hutchinson gave Weeks her car to drive on July 3, 2008, she was aware that Weeks did not have car insurance. (Hutchinson EUO, at 37). The Defendants argue that Hutchinson was not aware the Weeks was not covered under her own policy with North East, which insured the car Josh was driving at the time of the accident.

In support of their contention that Weeks was covered under Hutchinson's automobile insurance policy, the Defendants point to the following provision from Hutchinson's policy:

> PART A – LIABILITY COVERAGE
> INSURANCE AGREEMENT
> ***
> B. "Insured" as used in this Part means:
>    1. You or any "family member" for the ownership maintenance or use of any auto or "trailer".
>    2. Any person using "your covered auto."

Based on this provision the Defendants argue that Weeks was covered under Hutchinson's policy, and that they are entitled to collect damages under the policy resulting from Weeks' negligence on July 3, 2008. The Defendants further argue that (1) Northeast is precluded from rescinding the insurance policy at issue by 24-A M.R.S. § 2903, (2) the rights of the injured third parties are paramount to North East's rights to rescind based on principles of equity, and (3) that North East owes Hutchinson and Weeks a duty to defend against the cross claim of the other defendants based on *Northern Sec. Ins. Co. v. Dolley*, 669 A.2d

13

1320 (Me. 1996), and on *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, 707 A.2d 384.

## DISCUSSION

### 1. North East's Motions for Summary Judgment

North East seeks to rescind Hutchinson's insurance policy based on Hutchinson's alleged misrepresentation pursuant to 24-A M.R.S. § 2411, which provides:

> Misrepresentations, omissions, concealment of facts and incorrect statements may not prevent a recovery under the policy or contract unless either:
> 1. Fraudulent; or
> 2. Material either to the acceptance of risk, or to the hazard assumed by the insurer, such that the insurer in good faith would either not have issued the insurance or contract, or would not have issued it at the same premium rate . . . if the true facts had been made known to the insurer as required by either the application for the policy or contract or otherwise.

24-A M.R.S. § 2411. "Title 24-A M.R.S. § 2411 requires an insurer to prove both fraud and materiality in an action for rescission of an insurance policy." *Liberty Ins. Underwriters Inc. v. Faulkner*, 2008 ME 149, ¶14, 957 A.2d 94, 99. "An insurer must show actual reliance in order to rescind a policy" pursuant to Title 24-A M.R.S. §2411. *Id.* at ¶ 19, 957 A.2d at 100. To determine whether a misrepresentation, omission, concealment of fact, or incorrect statement is material, the court must consider "whether the facts, if truly stated, would have influenced a reasonable insurer in deciding whether to accept or reject the risk of entering into the contract, in fixing the premium rate, in fixing the amount of

insurance coverage, or in providing coverage with respect to the hazard resulting in the loss." *York Mutual Ins. Co. v. Bowman*, 2000 ME 27, ¶ 9, 746 A.2d 906, 909.[8]

North East claims that Hutchinson provided false information when she applied for insurance through the Varney Agency, and that North East relied on the misinformation to issue a policy at a lower premium rate than it would have charged had it had accurate information. There is no question that Hutchinson's misrepresentations, omissions, concealment of facts, or incorrect statements are material to the contract. As North East points out, Weeks' presence in the household and status as a licensed driver would have been a risk factored into the calculation of the premium on the policy, which would have resulted in a higher premium. The question for the court is whether Hutchinson fraudulently[9] provided false information when she applied for insurance through the Varney Agency.

During the motion hearing on May 28, 2010, the parties disputed what was required to show Hutchinson's misrepresentations were fraudulent, as opposed to negligent. The Co-Defendants argued that in order for a

---

[8] This case is factually similar to *York Mutual Insurance Co. v. Bowman*, 2000 ME 27, 746 A.2d 906. In *York Mutual* the insured applied for car insurance for herself and her husband, and failed to provide information about her sons and their respective driving records. *Id.* at ¶2, 746 A.2d at 907. When her husband was involved in a car accident the insurance company sought to rescind the policy based on the insured's fraudulent statements. *Id.*

[9] In order to make a claim for fraud, a plaintiff must establish that a defendant (1) made a false representation (2) of material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act in reliance upon the false representation, and (5) the plaintiff justifiably relied upon the representation as true and acted upon it to his damage. Simmons, Zillman & Gregory, *Maine Tort Law* § 11.03 at 308–09 (1999 ed.), citing *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979).

misrepresentation to be fraudulent there must be evidence that shows statements were made with intent to deceive, or were made with some nefarious purpose. The Co-Defendants claim North East cannot make this showing – for example, Hutchinson never explicitly stated she "did not tell Varney about Joshua Weeks because she wanted to save money on her insurance." Such an explicit showing of intent is not required in order to prove fraud. In order to make out a prima facie case of fraud, a plaintiff must prove the elements of fraud by clear and convincing evidence. *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771, 773. "Evidence is clear and convincing if the factfinder could reasonably have been persuaded that the required findings were proved to be highly probable." *Me. Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707, 711 (internal quotations omitted).

In this case Hutchinson stated that she sought insurance through the Varney Agency because she wanted car insurance at a low price and she could not afford the high rates on her previous policy. There is clear and convincing evidence that Hutchinson made fraudulent misrepresentations in order to obtain a less expensive insurance premium. On at least three occasions, Hutchinson did not mention her son Joshua Weeks to the Varney Agency or North East. First, when she was asked insurance application questions over the phone, Hutchinson told Day (1) there were no other residents in her household 14 years old or older aside from her husband and herself, and (2) that there were no other licensed drivers in the household aside from her husband and herself. Second, when Hutchinson signed the Maine Personal Auto Application, she did not mention her son under the "Resident & Drivers" section, and she declared that to the best of her knowledge the statements in the application were true. Finally, when

Hutchinson called Varney on May 6, 2008 to add her 20-year-old daughter to the policy Hutchinson again was asked if there were any other drivers in the household and again she answered no. Hutchinson must have been aware that adding Joshua to the policy would increase her premium because she incurred an additional premium of $936.00 when she added her daughter. At the time Hutchinson applied for her policy through Varney, and at all times thereafter, her son Joshua Weeks was a licensed driver in her household.

Because the undisputed material facts establish by a clear and convincing standard that Hutchinson fraudulently misrepresented or omitted material information about her son during the application process, North East's motion for summary judgment to rescind the policy pursuant to 24-A M.R.S. § 2411 is granted.

2. **The Co-Defendants' Motion for Summary Judgment**

The Co-Defendants argue that North East is prohibited from rescinding Hutchinson's automobile insurance policy based on 24-A M.R.S. § 2903. Section 2903 provides:

> The liability of every insurer which insures any person against accidental loss or damage on account of personal injury or death or on account of accidental damage to property shall become absolute whenever such loss or damage, for which the insured is responsible, occurs. The rendition of a final judgment against the insured for such loss or damage shall not be a condition precedent to the right or obligation of the insurer to make payment on account of such loss or damage.

24-A M.R.S. § 2903. The Co-Defendants claim that this provision essentially trumps North East's attempt to void the policy based on 24-A M.R.S. § 2411, reasoning that once a loss for which the insured is responsible occurs, North East's liability is absolute. The court disagrees with the Co-Defendants

17

interpretation of section 2903. "An insurer's duty to defend is a question of law that is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy." *Commercial Union Ins. Co. v. Alves*, 667 A.2d 70, 72 (Me. 1996). When a party seeks to rescind a contract, they seek to be put substantially in the position he occupied before the contract. *Getchell v. Kirkby*, 113 Me. 91, 94 (Me. 1915). In this case, if North East were able to rescind the contract, the result would be as if they never had a duty to defend the claims against Hutchinson to begin with. Whether Hutchinson's policy with North East was valid at the time of the accident is a question that this court must resolve before the court can determine if North East has a duty to defend or if North East's liability is absolute under section 2903.

The Co-Defendants also argue that their rights as injured third-parties are paramount to North East's right to rescind Hutchinson's policy. In support of this argument, the Co-Defendants rely on *Midland Risk Management Co v. Watford*, 876 P.2d 1203, 1204 (Ariz. App. Div.2 1994). The Arizona Court of Appeals held in *Midland* that an insurer's obligation to provide coverage became absolute whenever injury occurs, irrespective of whether there were fraudulent and material misrepresentations made during the application process. *Midland*, 876 P.2d at 1206. While the facts of *Midland* are similar to the facts of this case and to the facts of *York Mutual*, the court disagrees with the result. To hold otherwise would render meaningless the effect of 24-A M.R.S. § 2411. Therefore, the Co-Defendants' motion for summary judgment is denied.

Therefore, the entry is:

North East's motion for summary judgment to rescind Hutchinson's policy is GRANTED.

The Co-Defendants' motion for summary judgment based on 24-A M.R.S. § 2903 is DENIED.

Dated at Portland, Maine this _23RD_ day of _June_, 2010.

Robert E. Crowley
Justice, Superior Court

NORTH EAST INSURANCE COMPANY - PLAINTIFF

Attorney for: NORTH EAST INSURANCE COMPANY
JOHN WHITMAN  - RETAINED 11/18/2008
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS STREET
PO BOX 9545
PORTLAND ME 04112-9545


vs
SANDRA E HUTCHINSON  - DEFENDANT
JOSHUA WEEKS  - DEFENDANT
REBEKAH ALLEY  - DEFENDANT

Attorney for: REBEKAH ALLEY
JASON PAUL DONOVAN  - RETAINED 07/06/2009
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

Attorney for: REBEKAH ALLEY
ROBERT C HATCH  - RETAINED 12/10/2008
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

SAMANTHA YOUNG  - DEFENDANT

Attorney for: SAMANTHA YOUNG
THOMAS MARJERISON  - RETAINED 03/20/2009
NORMAN HANSON & DETROY
415 CONGRESS STREET
PO BOX 4600
PORTLAND ME 04112-4600

SARAH BETTS  - DEFENDANT

Attorney for: SARAH BETTS
CARL RELLA  - WITHDRAWN 12/18/2008
RELLA & LISTER PA
ONE CUMBERLAND PLACE, STE 314
PO BOX 2700
BANGOR ME 04402-2700

Attorney for: SARAH BETTS
HUMPHREY HN JOHNSON  - RETAINED 12/11/2008
LAW OFFICE OF GERARD FOURNIER
27 PEARL STREET
PO BOX 7109
PORTLAND ME 04112-7109

JOHN THOMAS  - DEFENDANT
BRUCE K EATON  - DEFENDANT

SUPERIOR COURT
CUMBERLAND, ss.
Docket No  PORSC-CV-2008-00662


**DOCKET RECORD**

Attorney for: BRUCE K EATON
STEVEN BLACKWELL  - RETAINED 12/09/2008
CUDDY & LANHAM
470 EVERGREEN WOODS
BANGOR ME 04401

Attorney for: BRUCE K EATON
BRETT D BABER  - RETAINED 12/09/2008
LANHAM & BLACKWELL, PA
470 EVERGREEN WOODS
BANGOR ME 04401

Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 11/18/2008

## Docket Events:

11/18/2008 FILING DOCUMENT - COMPLAINT FILED ON 11/18/2008
          DECLARATORY JUDGMENT COMPLAINT WITH EXHIBITS A-B.  (MH)

11/18/2008 Party(s):  NORTH EAST INSURANCE COMPANY
          ATTORNEY - RETAINED ENTERED ON 11/18/2008
          Plaintiff's Attorney: JOHN WHITMAN

11/18/2008 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 11/18/2008

12/09/2008 Party(s):  BRUCE K EATON
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 11/20/2008
          UPON BRUCE EATON (GM)

12/09/2008 Party(s):  JOSHUA WEEKS
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 11/20/2008
          UPON JOSHUA WEEKS TO SANDRA HUTCHINSON (GM)

12/09/2008 Party(s):  SANDRA E HUTCHINSON
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 11/20/2008
          UPON SANDRA HUTCHINSON (GM)

12/09/2008 Party(s):  SARAH BETTS
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 12/01/2008
          UPON SARAH BETTS TO CHRISTOPHER BETTS (GM)

12/09/2008 Party(s):  REBEKAH ALLEY
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 11/20/2008
          UPON REBEKAH ALLEY (GM)

12/09/2008 Party(s):  BRUCE K EATON
          RESPONSIVE PLEADING - ANSWER & COUNTERCLAIM FILED ON 12/09/2008
          OF BRUCE K. EATON (GM)

12/09/2008 Party(s):  BRUCE K EATON
          ATTORNEY - RETAINED ENTERED ON 12/09/2008
          Defendant's Attorney: STEVEN BLACKWELL